**ROY E. THOMAS CONSTRUCTION COMPANY and Roy E. Thomas, Individually, Appellants,**

v.

**Robert J. ARBS and Wife, Martha J. Arbs, Appellees.**

**No. 2–84–103–CV.**

Court of Appeals of Texas, Fort Worth.

June 6, 1985.

Steves, Leonard & Jones, Michael L. Sampson, Fort Worth, for appellants.

Bishop, Payne, Lamsens and Brown, Andrew C. Brassey, Fort Worth, for appellees.

Before HUGHES, JOE SPURLOCK, II and HILL, JJ.

## OPINION ON MOTION FOR REHEARING

JOE SPURLOCK II, Justice.

Following our opinion on April 25th 1985, appellees made a motion for rehearing. That motion is denied. However, the court on its own motion, upon reconsidering points of error ten and eleven, withdraws that opinion, and substitutes this therefor.

This is a suit for damages brought under the Texas Deceptive Trade Practices Act (hereinafter called the Act). The appellees Robert J. and Martha Arbs, as purchasers of a residence, brought suit against the appellants, Roy E. Thomas Construction Company and Roy E. Thomas, individually, as the builder/vendor. Based upon the jury's answers to special issues, the trial court rendered judgment in favor of appellees in the amount of $15,200.00 as actual damages. In accordance with the verdict and the provisions of the Act in effect at the time this cause of action arose, the trial court found that the Arbs were entitled to have their actual damages trebled and ordered that they recover from Roy E. Thomas Construction Company and Roy E. Thomas, individually, jointly and severally, the sum of $45,600.00. The trial court also awarded the Arbs reasonable attorney's fees, costs of court and interest.

We affirm in part and reverse and reform the judgment in part.

Appellants raise sixteen points of error in the present appeal. Points of error one through six, ten, eleven, fifteen and sixteen challenge the legal and factual sufficiency of the evidence to support the jury's answers to certain special issues. Point of error seven challenges the trial court's award of treble damages to the Arbs. Points of error eight, thirteen and fourteen complain of the trial court's award of attorney's fees to them. Point of error nine challenges the trial court's admission of certain evidence. Point of error twelve complains of the trial court's refusal to allow a trial amendment by appellant.

In determining a "no evidence" point, we are to consider only the evidence and inferences which tend to support the finding of the jury and disregard all evidence and inferences to the contrary. See *International Armament Corporation v. King*, 686 S.W.2d 595 (1985); *Stodghill v. Texas Employers Insurance Association*, 582 S.W.2d 102, 103 (Tex.1979); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If there is any evidence of probative force to support the finding of the jury, the point must be overruled and the finding upheld. *In re King's Estate*, 244 S.W.2d at 661–62.

A "no evidence" point of error must and may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; (4) the evidence establishes conclusively the opposite of a vital fact. *Royal Indemnity Co. v. Little Joe's Catfish Inn, Inc.*, 636 S.W.2d 530, 531 (Tex.App.—San Antonio 1982, no writ); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEXAS L.REV. 361 (1960).

If a "no evidence" point is sustained and the proper procedural steps have been taken, the finding under attack may be disregarded entirely and judgment rendered for the appellant unless the interests of justice require another trial. See *National Life and Accident Insurance Co. v. Blagg*, 438 S.W.2d 905, 909 (Tex.1969); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

Where the challenge to a jury finding is framed as an "insufficient evidence"

point, we are to consider all the evidence in the case, both that in support of and that contrary to the finding, to determine if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *See Garza v. Alviar*, 395 S.W.2d at 823. If the court so determines, the finding should be set aside and a new trial ordered. *Id.*

In considering an "insufficient evidence" point, we must remain cognizant of the fact that it is for the jury, as the trier of fact, to judge the credibility of the witnesses, to assign the weight to be given their testimony, and to resolve any conflicts or inconsistencies in the testimony. *See Taylor v. Lewis*, 553 S.W.2d 153, 161 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.). This court may not substitute its judgment for that of the jury if the challenged finding is supported by some evidence of probative value and is not against the great weight and preponderance of the evidence. *See Alford, Meroney & Co. v. Rowe*, 619 S.W.2d 210, 213 (Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.).

On March 31, 1977, the Arbs entered into a contract for the purchase of a new house, located in Burleson, Texas, from appellant, Roy E. Thomas Construction Company. At the time of the sale, the house was not complete and the sales contract specifically stated that the house was to be completed in accordance with an attached addendum. The contract further stated that "[b]uilder will warrant construction of house for one year". The Arbs moved into the house sometime in May of 1977, but were dissatisfied with the manner in which the house had been completed and in July of 1977, they submitted a list of items to appellants to either be completed or repaired. In August of 1977, the Arbs began to notice cracks in the foundation and bricks. They filed suit against the appellants in April of 1978. Trial to a jury commenced on January 3, 1984 and following the jury's verdict, judgment was rendered for the Arbs.

The Arbs' sixth amended original petition alleged numerous defects and incomplete items which constituted a breach of both express and implied warranties. They specifically alleged that the construction of the house's foundation was not performed in a good and workmanlike manner and that such negligent construction resulted in cracks in both the foundation and the bricks of the house. At trial, they waived their complaints about all of the defects except those concerning the foundation and bricks. The evidence presented at trial concentrated on these two alleged defects and how they constituted a breach of the express and implied warranties of habitability.

Appellants' points of error one and two contend that the trial court erred in granting judgment against them because there was no evidence and factually insufficient evidence to support the jury's answer to Special Issue No. 1, that appellant had breached its warranty of repair. Although the issue did not inquire about "repairs", appellants nevertheless argue that the demands made by the Arbs were so unreasonable that it was *impossible* for appellants to fulfill their warranty of repair. Appellants rely on a defense of impossibility of completion and claim that the Arbs wrongfully interfered with the necessary repairs. Appellants claim that they at all times have stood ready, willing and able to repair the bricks and mortar in question.

We find nothing in the Arbs' pleadings, the evidence at trial or the jury's answers to special issues which creates or gives rise to a "warranty of repair". Special Issue No. 1 asked:

Do you find from a preponderance of the evidence that Roy E. Thomas Construction Company breached its express and/or its implied warranty in the construction of the residence owned by Plaintiffs, Mr. and Mrs. Robert J. Arbs?

In connection with this Issue you are instructed that the seller herein has expressly and impliedly warranted that the house would be constructed in a good and workmanlike manner and that it is suitable for habitation.

The jury answered affirmatively by stating, "We do". The jury then found that such breach was a producing cause of the damage to the house.

The fact that the foundation and masonry work were completed prior to the time of the Arbs moving into the house is not open to argument. Their cause of action was not based upon a failure to repair but upon a failure to construct in a good and workmanlike manner. Appellants' breach of warranty did not flow from a failure to repair but from a failure to properly construct. This being so, the Arbs could not prevent the performance of a task which was complete prior to their taking possession of the house.

█ We hold that the defense of impossibility of completion is not applicable in this case and otherwise is not available to appellants. It is a common law defense to a suit for breach of contract. See Longview Construction and Development, Inc. v. Loggins Construction Company, 523 S.W.2d 771 (Tex.Civ.App.—Tyler 1975, no writ), and S.K.Y. Investment Corporation v. H.E. Butt Grocery Company, 440 S.W.2d 885 (Tex.Civ.App.—Corpus Christi 1969, no writ). But, it has been held that "[c]ommon law defenses may not be used to defeat claims under the DTPA." Joseph v. PPG Industries, Inc., 674 S.W.2d 862, 865 (Tex.App.—Austin 1984, writ ref'd n.r.e.).

The Arbs testified that they first noticed cracks in the foundation and bricks in August of 1977, a little over three months after having moved into the house in May of 1977. The evidence presented at trial, conclusively showed that the cracks in the brick were directly related and attributable to the cracks in the foundation. Given this, the controlling issue in the case was whether or not the foundation had been constructed in a good and workmanlike manner.

At trial, the Arbs introduced the testimony of four expert witnesses and appellants introduced the testimony of two experts, all of which testified as to the cause of the cracks and the proper remedy for same. Appellant, Roy E. Thomas, also testified as to what he felt was the cause of the cracks. Thomas testified at the trial and continues to argue on appeal that the cracks in the foundation were caused by the Arbs' failure to water the foundation. He argues that this failure caused the moisture content of the soil to decrease and thereby allowed the foundation to settle. This settling, according to Thomas, caused the cracks. The testimony of appellants' experts supported this watering theory and even some of the testimony by one of the Arbs' experts revealed the need to maintain a consistent moisture level in the soil.

At the time the Arbs signed the contract for sale of the house in March of 1977, the slab or foundation had already been constructed. They did not move in until late in May of 1977, and noticed the cracks in the foundation in August of 1977. Thomas testified that there were other homes in the neighborhood which he had built and that those homes were still vacant when the Arbs moved into their house. Thomas then admitted that he had never watered the foundations of those vacant houses. His own expert testified that without a watering program, cracks in a foundation can start to appear within three months after the slab is poured.

All of the above evidence would tend to support a theory of contributory negligence on the part of the Arbs in causing the cracks. In Special Issue No. 2, the jury was asked:

Do you find from a preponderance of the evidence that Plaintiffs, Mr. and Mrs. Robert J. Arbs, failed to take the necessary measures that a reasonably prudent owner should have taken or performed in the maintenance and care of the foundation of the house?

The jury answered in the negative by stating, "We do not". Appellant has failed to challenge this finding and is therefore bound by it. This returns us to the controlling issue of whether or not the foundation was constructed in a good and workmanlike manner.

The Arbs' expert witness testified that, considering the soil conditions present underneath the house, the foundation "was not constructed according to what standard construction practices would dictate." It was his opinion that "the foundation was not stiff enough to resist the differential movements" caused by the soil which movement resulted in the cracking in the foundation and bricks. This expert further testified that a foundation could be designed which would be rigid enough to prevent this cracking. Even one of appellants' experts admitted that the designing of such a slab was possible. The Arbs' expert testified that it was important for a builder to have information about the soil on the site or in close proximity to that site prior to building a house. Again, appellants' expert agreed that it was important for a builder to either have such information or design the foundation stout enough to withstand movement. Appellant Thomas admitted that no soil tests were made prior to pouring the slab of the Arbs' house.

We find that there was some evidence, more than a scintilla, to support the jury's answer to Special Issue No. 1. We further find that the evidence was sufficient to support such answer and that the jury's answer was not against the great weight and preponderance of the evidence. We overrule appellants' points of error one and two. In doing so, we have not addressed appellants' argument surrounding his standing offer to repair the brick. This argument will be addressed with appellants' points of error five and six.

Appellants' points of error three, four, five and six contend that the trial court erred in granting judgment for appellees in the amount of $45,600.00, as there was no evidence and insufficient evidence to support the jury's answers to Special Issues Nos. 5a and 5b. Special Issue No. 5 asked:

What do you find from a preponderance of the evidence to be the reasonable and necessary costs, if any, in Tarrant County, Texas, to repair each of the following items?

Answer separately in dollars and cents, if any, with respect to each of the following items:

a. The foundation in question....

b. The bricks and mortar....

The jury answered subpart "a" by stating, "$12,000.00", and subpart "b" by stating, "$3,200.00". Appellants argue that the evidence failed to prove that either of these costs of repair were reasonable and necessary.

■ Appellants contend that the house has, at this point, stabilized and will not continue to move in the future. In the alternative, they argue that the cost of repair of $12,000.00 is unreasonable in that there are other cheaper methods of repair available to the Arbs. Appellants continue to argue that merely watering the foundation will remedy the problems.

At trial, the only relief sought by the Arbs was the repair of the foundation and bricks. They testified that the cracks have continued to worsen and that more cracks have appeared. Their expert testified that without remedial measures the foundation will continue to move in the future. Appellants' expert, on the other hand, testified that there was very little chance of the foundation moving further at this point. All of the evidence at trial showed beyond dispute that the foundation had moved or settled.

The Arbs' expert recommended two remedial measures to stabilize the foundation. One suggestion was the installation of piers underneath the perimeter of the house and the other was the injection of a lime slurry into the soil to stabilize the moisture content. He further testified that he did not recommend one method over the other, but that the injection method was not used that much in remedial work anymore. There was also evidence on other possible remedial measures to stabilize the movement including merely watering the foundation.

The only evidence as to the cost of any remedial measure was evidence on the cost of installing piers. Appellants offered evidence that such a remedy would cost $12,-

000.00. Neither the Arbs nor appellants offered evidence as to the cost of any other remedy. It was appellants' position that no remedy was needed in that the foundation had stabilized and would not move further or that merely watering the foundation would achieve stabilization. Appellants' expert testified that the installation of piers would be useless in that it would merely retain whatever settlement in the foundation had already occurred.

The jury, as the ultimate trier of fact, had all of the above evidence before it. It was their duty to resolve the existing conflicts in the evidence and to judge the credibility of the witnesses. The jury decided all issues in favor of appellees and against the appellants and this court is not in a position to overturn such a determination. We find that there was some evidence, more than scintilla, to support the jury's answer to Special Issue No. 5a. We further find that the evidence was sufficient to support such answer and that the jury's answer was not against the great weight and preponderance of the evidence. We overrule appellants' points of error three and four.

The Arbs offered evidence that the cost to repair the brick in 1979 would have been $2,650.00. They then offered evidence that this cost had increased since such bid was obtained. At the time of trial, the cost of such repairs was estimated to be twenty percent greater than the original 1979 bid or approximately $530.00 greater. The jury found the reasonable and necessary cost to repair the brick was $3,200.00.

Appellants initially contend that this amount is excessive by $450.00 in that such amount was for waterproofing of the house which was not originally contracted for by the Arbs. They further argue that the entire amount is unreasonable in that appellant, Roy E. Thomas Construction Company, has at all times stood ready to repair the brick.

Appellant Thomas testified that he had a meeting with the Arbs in April of 1978, at which he offered to fix the brick but was not willing to spend $12,000.00 to have the foundation fixed. Thomas testified that this offer covered the replacement of every broken or cracked brick in appellees' house. He further testified that he did not believe the foundation needed any repair, therefore, he was unwilling to spend the $12,000.00 for piers. Appellee Robert J. Arbs also testified that Thomas had offered to fix the brick but refused to repair the foundation. Two of the Arbs' expert witnesses testified that if the brick were repaired without doing anything to the foundation that the bricks would crack again. Appellant Thomas even admitted that if there were a problem with the foundation and the bricks were repaired without correcting the problem then the bricks could crack again.

As mentioned above, the Arbs' witness testified and the jury found that the reasonable and necessary cost to repair the brick was $3,200.00. Appellants' own expert witness testified that the bid received by the Arbs for brick work was a reasonable bid. Appellant Thomas, however, testified that the reasonable cost which he would charge to repair the brick would be $400.00. Thomas further testified that he could have the brick repaired for that price.

 The Arbs were only entitled to recover the amount of actual damages which they could prove were caused by appellants' conduct. *Joseph*, 674 S.W.2d at 866. An offer by appellants to make the necessary repairs would, if established by a preponderance of the evidence, remove the reasonable cost of such repairs from the amount of actual damages proved by the Arbs. *Id.* at 866. The actual existence of such an offer and the willingness of the appellants to live up to such an offer, however, was a fact question to be determined by the ultimate trier of fact, in this case, the jury. The court's charge did not contain an issue concerning any offer to repair made by appellants. Appellants neither objected to the omission of such an issue nor requested that such an issue be included in the court's charge. In the absence of such a request or objection nothing is preserved for appellate review. *Miller v. Dickenson,*

677 S.W.2d 253, 259 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.). The existence of a good faith offer to repair was not conclusively established by the evidence and in the absence of an issue either requested or submitted to the jury, such a defensive theory is deemed as waived. TEX.R. CIV.P. 279.

In regard to appellants' contention that the award of damages is excessive by $450.00, the jury's answer to Special Issue No. 5b implies a finding that such an amount was part of the reasonable and necessary cost of repair. Absent written findings by the trial court, such issue is deemed as found by the court in favor of appellees. TEX.R.CIV.P. 279.

We find that there was some evidence, more than a scintilla, to support the jury's answer to Special Issue No. 5b. We further find that the evidence was sufficient to support such answer and that the jury's answer was not against the great weight and preponderance of the evidence. We overrule appellants' points of error five and six.

Appellants' point of error seven contends that the trial court erred in awarding treble damages to the Arbs because they proved as a matter of law that they were not given a reasonable opportunity to cure the defects before suit was filed. This point of error can only be construed as contending that there is no evidence to support the jury's answer to Special Issue No. 10. Special Issue No. 10 asked:

> Do you find from a preponderance of the evidence that Roy E. Thomas Construction Company was not given a reasonable opportunity to cure the defects, if any, in the house before suit was filed?

The jury answered that, "We find that a reasonable opportunity was given."

Proof that appellants were not given a reasonable opportunity to cure the defects before suit was filed would be a defense to an action under the Deceptive Trade Practices Act for the breach of an express or implied warranty. Deceptive

Trade Practices—Consumer Protection Act —Definitions, Relief, Defenses, Legislative Intent, ch. 216, sec. 6, 1977 Tex.Gen.Laws 600, 604 *amended by* Act of June 13, 1979, ch. 603, sec. 5, 1979 Tex.Gen.Laws 1327, 1330–31. Appellants argue that they did not even know the actual complaints of the Arbs until April of 1983.

The evidence and testimony at trial conclusively shows that appellants learned of the problems with the foundation and bricks in August of 1977. They were informed by the Arbs of these problems and knew the nature of the complaints. The Arbs originally filed suit in April of 1978. The evidence does not reveal an offer by appellants to fix the brick prior to April of 1978 and appellants refused to make any repairs to the foundation.

We find that there is some evidence, more than a scintilla, to support the jury's answer to Special Issue No. 10. Appellants' point of error seven is overruled.

Appellants' point of error eight contends that the trial court erred in awarding attorney's fees to the Arbs in that, as a matter of law, the Arbs made excessive demands of them and such demands preclude the awarding of attorney's fees. Appellants argue that the demands made in the Arbs' petition were as a matter of law excessive. Their argument must be construed as contending that there is no evidence to support the jury's answer to Special Issue No. 4 which asked:

> Do you find from a preponderance of the evidence that Plaintiffs, Mr. and Mrs. Robert J. Arbs, wrongfully demanded an amount in excess of that which they were due under the agreement made subject of this action?

The jury answered by stating, "We do not".

Appellants, once again, rely on a common law defense to the awarding of attorney's fees in a suit on a contract. *See Findlay v. Cave,* 611 S.W.2d 57 (Tex.1981). We have already determined that common law defenses are not applicable to claims under the Deceptive Trade Practices Act. *Jo-*

*seph,* 674 S.W.2d at 865. We also find that there is some evidence, more than a scintilla, to support the jury's answer to Special Issue No. 4. Appellants' point of error eight is overruled.

 Appellants' point of error nine contends that the trial court erred by allowing, over timely objection, the introduction of appellees', plaintiffs below, Exhibit No. 4, as that exhibit contains hearsay. The exhibit in question is a letter dated August 31, 1977, sent by appellee Robert J. Arbs to appellant Roy E. Thomas Construction Co. We agree that the letter contained inadmissible hearsay, however, we find that the admission of such letter amounted to no more than harmless error.

The letter was in the form of a summary of events Robert J. Arbs claimed had transpired since the purchase of the house. It reviewed what he felt was the agreement with appellants to correct defects in the house and make necessary repairs. The letter set out actions which had been taken by appellants, and referred to other correspondence and communications between the parties. The overall tone of the letter voiced a strong dissatisfaction with appellants' actions. At one point, the letter specifically refers to cracks in the bricks and slab.

At trial, Robert J. Arbs was asked to identify Exhibit No. 4 and it was then offered into evidence. Appellants objected to the letter "as containing hearsay". It is unclear from the record if appellants were even allowed to specify the nature of their objection to the court. The trial court overruled the objection and received Exhibit No. 4 into evidence. In the present appeal, appellants point out the specific parts of the letter which they contend to be inadmissible hearsay.

We find that the majority of this lengthy letter did not constitute hearsay and was admissible. The letter was admissible to show that appellants were put on notice as to the nature of the Arbs' complaints, to show that appellants were given a reasonable opportunity prior to suit to cure the defects and to show good faith on the part of the Arbs in dealing with appellants. *See First Equitable Title Company, Inc. v. Products Diversified, Inc.,* 678 S.W.2d 524 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) and *Butler v. Joseph's Wine Shop, Inc.,* 633 S.W.2d 926 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). The letter does, however, contain inadmissible hearsay.

At one point, the letter states:

Again on August 29th, at about 10:30 A.M., I called your office lady to advise her that I had discovered a rather bad crack in the bricks on the south side of our house and a crack in the slab. *I again asked that she have you contact me, since I considered this extremely serious, particularly in light of the fact that neighbors had told me of similar difficulties that they had in homes purchased from you.* [Emphasis added.]

Further in the letter, Robert J. Arbs states:

While it must be considered heresay [sic], a number of our neighbors in this area, who have purchased homes from you have told us of the great difficulties they have had and are having in getting you to take care of shortcomings in their homes.

We find that it was error for the trial court to admit the above two portions of the letter.

 It has been held that:

To obtain reversal of a judgment based upon error of the trial court in admission or exclusion of evidence, appellant must first show that the trial court's determination was in fact error, and second, that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. [Citation omitted.] Reversible error is not ordinarily shown in connection with rulings on questions of evidence unless the whole case turns on the particular evidence admitted or excluded.

*Atlantic Mutual Insurance Company v. Middleman,* 661 S.W.2d 182, 185 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). *See Bridges v. City of Richardson,* 163 Tex.

292, 354 S.W.2d 366 (1962) and TEX.R. CIV.P. 434. In determining whether reversible error exists, it is well settled that a "trial court's admission of evidence over objection is deemed to be harmless where the objecting party subsequently permits the same or similar evidence to be introduced without objection." *Badger v. Symon*, 661 S.W.2d 163, 164–65 (Tex.App.— Houston [1st Dist.] 1983, writ ref'd n.r.e.).

At trial, during cross-examination, Robert J. Arbs testified that he was "aware that at least one of them [other houses built by appellants] had to have the slab corrected." Appellant Thomas testified that appellants had built other houses in the area. Thomas testified concerning the type of slabs which had been constructed and even admitted that problems had occurred with some of the slabs. In light of this testimony, we do not find that the whole case turns on the particular hearsay evidence admitted, nor do we find the error was reasonably calculated to cause, or did cause the rendition of an improper judgment. Accordingly, we find the trial court's receipt of Exhibit No. 4 into evidence amounted to no more than harmless error. Appellants' point of error nine is overruled.

■ Appellants' points of error ten and eleven contend that the trial court erred in granting judgment against Roy E. Thomas, individually, as there was no evidence and factually insufficient evidence to support the jury's answer to Special Issue No. 7, that Roy E. Thomas Construction Company had become the alter ego of Roy E. Thomas. Special Issue No. 7 asked:

Do you find from a preponderance of the evidence that the Defendant, Roy E. Thomas, conducted the affairs of Defendant, Roy E. Thomas Construction Company, in such a manner that the corporation became the alter ego of the defendant, Roy E. Thomas?

In connection with this Issue you are instructed that a corporation may become the alter ego of an individual if the assets of the corporation are dealt with by the individual as if owned by the individual; or, if the individual controls the corporation and conducts its business affairs without due regard for the corporate nature of the business; or where it appears that individuals are using the corporate entity as a sham to perpetrate fraud, to avoid personal liability or to avoid the effect of a statute.

The jury answered this special issue by stating, "We do".

■ At trial, the evidence showed that there were only three stockholders in Roy E. Thomas Construction Company; Roy E. Thomas, Thomas's wife and an attorney. It is undisputed that the only other evidence as to the corporate entity was testimony surrounding checks drawn on the corporation's account. Some of these checks were made out to members of Thomas's family. These checks bore notations which made it questionable whether or not corporate funds were being used for private purposes. There was, however, no evidence of under capitalization or failure to adhere to corporate formalities. No other corporate records were introduced and it was not challenged whether the corporation, at the time of trial, was in existence or in good standing. It was not shown that the corporation could not satisfy a potential judgment rendered against it. In light of this evidence, it is clear there was not sufficient evidence to show that Roy E. Thomas Construction Company was the alter ego of Thomas. However, we need not rely on this to dispose of the present point of error.

Appellant's points of error go further than a mere challenge to the evidence which supports Special Issue No. 7. Thomas further argues that there is "no evidence" which justifies the piercing of the corporate veil and we agree.

■ It has been stated many times by the Supreme Court of Texas that:

"Courts *will not* disregard the corporation fiction and hold individual officers, directors, or stockholders liable on the obligations of a corporation except where it appears that the individuals are using

the corporate entity as a sham to perpetrate a fraud, to avoid personal liability, avoid the effect of a statute, or in a few other exceptional situations." [Emphasis added.]

*Torregrossa v. Szelc,* 603 S.W.2d 803, 804 (Tex.1980). It is not possible to more emphatically express the necessity for a plaintiff to prove that he will suffer some type of harm or injustice by adhering to the corporate fiction before the corporate veil will be pierced. *Torregrossa* absolutely stands for the proposition that the burden of proof is on the plaintiff to prove harm in order to pierce the corporate veil.

The plaintiffs' burden may be satisfied and the corporate fiction may be disregarded:

(1) where it is used as a means for perpetrating fraud; (2) where the corporation is organized and operated as the mere tool or business conduit of another corporation; (3) where resort is made to the corporate fiction in order to avoid an existing legal obligation; (4) where the corporate form is used to achieve or perpetuate monopoly; (5) where the corporate structure is used as a vehicle for circumventing a statute; or (6) where the fiction is invoked in order to protect crime or justify wrong.

*Roylex, Inc. v. Langson Bros. Construction Co., Inc.,* 585 S.W.2d 768, 771 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). The court in *Roylex, Inc.,* further held that:

Those acts or misuses which *may* cause a court to 'pierce the corporate veil' include the commencement of business without the issuance of shares, a lack of shareholder meetings or directors' meetings or of the signing of consents, the making of decisions by shareholders as if they were partners, failure to distinguish between corporate property and personal property, use of corporate funds to pay personal expenses without proper accounting, or failure to maintain complete corporate and financial records. There seems to be little reason to punish errant shareholders *unless their actions are di-*

*rected toward defrauding another party.* [Emphasis added.]

*Id.* at 772. The disregard of the corporate entity will of course depend on the particular facts of each case.

It has been held that domination of corporate affairs by a sole stockholder will not in itself justify imposition of personal liability. *Tigrett v. Pointer,* 580 S.W.2d 375, 381 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.). Neither will the mere unity of financial interest justify a disregard of the corporate entity. *See Hanson Southwest Corporation v. Dal-Mac Construction Company,* 554 S.W.2d 712, 716 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.). In addition to either one of these facts, it must be shown that the corporate form was used to perpetrate a fraud or is relied on to justify wrongs and cause injustice. *Tigrett,* 580 S.W.2d at 381. The corporate entity will not be disregarded unless:

1) it is made to appear that there is such a unity that the separateness of the corporation has ceased to exist; and 2) the facts are such that an adherence to the fiction of the separate existence of the particular corporation would, under the particular circumstances, sanction fraud or promote injustice.

*Mortgage and Trust, Inc. v. Bonner & Company, Inc.,* 572 S.W.2d 344, 349 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.).

The burden of proof was on appellees to prove that Roy E. Thomas Construction Company was in fact the alter ego of Roy E. Thomas. *See Torregrossa,* 603 S.W.2d at 804. It was further incumbent on appellees to show that they would suffer harm by adhering to the corporate fiction. In this respect, they completely failed to satisfy their burden of proof. There is "no evidence" that appellees will suffer any harm or injustice by adhering to the corporate fiction.

Because the burden of proof was on the appellees, it was necessary for them to obtain an affirmative jury finding on

this issue. Such an issue was not submitted to the jury and appellees failed to request the inclusion of same. This court can only deem such an issue to be found if the record contains evidence to support such a finding. TEX.R.CIV.P. 279. "[I]f there is no evidence to support the finding on an omitted issue, such finding cannot be presumed." *Miller Seed Company v. Pool,* 508 S.W.2d 151, 155 (Tex.Civ.App.—Amarillo 1974, writ ref'd n.r.e.). *See Baca v. Sand, Inc.,* 600 S.W.2d 840 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.) and *Southern Roofing and Sheet Metal Company v. Paramount Construction Company, Inc.,* 512 S.W.2d 781 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.).

We find no evidence to justify a piercing of the corporate veil in the present case. Appellants' points of error ten and eleven are sustained and the judgment must be reformed accordingly. Due to our disposition of these points of error, we find it unnecessary to address appellants' point of error twelve which complains of the trial court's refusal to allow a trial amendment on the issue of estoppel to claim alter ego.

Appellants' points of error thirteen and fourteen contend that the trial court incorrectly allowed the granting of attorney's fees under the Deceptive Trade Practices Act and under TEX.REV.CIV.STAT. ANN. art. 2226 (Vernon Supp.1985), since actual damages have not been properly proved. Based on our disposition of appellants' points of error one through eight, we find points of error thirteen and fourteen to be without merit and overrule same.

Appellants' points of error fifteen and sixteen contend that the trial court incorrectly denied the granting of attorney's fees to them in that appellees' cause of action was groundless and brought in bad faith. Appellants argue that there was no evidence and insufficient evidence to support the jury's answers to Special Issue Nos. 3 and 3A. Special Issue Nos. 3 and 3A asked:

Do you find from a preponderance of the evidence that the action brought by Plaintiffs, Mr. and Mrs. Robert J. Arbs, under the Texas Deceptive Trade Practices Act against Defendant, Roy E. Thomas, was brought in bad faith or for the purposes of harassment?

\* \* \* \* \* \*

Do you find from a preponderance of the evidence that the action brought by Plaintiffs, Mr. and Mrs. Robert J. Arbs, under the Texas Deceptive Trade Practices Act against Defendant, Roy E. Thomas Construction Company, was brought in bad faith or for the purposes of harassment?

The jury answered both special issues by stating, "We do not".

We again find that our disposition of points of error one through eight which sustain the award of actual damages to appellees is sufficient to support the jury's answers to Special Issues Nos. 3 and 3A. We overrule appellants' points of error fifteen and sixteen.

We have sustained appellants' point of error eleven. We find that there is no evidence to justify the piercing of the corporate veil. The judgment of the trial court must, therefore, be reformed to reflect a take nothing judgment against appellant Roy E. Thomas, individually. We find no matter of fact to be ascertained and that the damage to be assessed and the matter to be decreed is certain. TEX.R. CIV. P. 434. We accordingly reform the judgment to reflect that appellees take nothing against appellant Roy E. Thomas, individually.

As reformed, the judgment is affirmed.