Frank Harvey ROBBINS, Individually
and as Administrator of the Estate of
Harvey Robbins, et al., Appellants,

v.

Ernestlene ROBBINS, Appellee.

No. 11–86–118–CV.

Court of Appeals of Texas,
Eastland.

March 19, 1987.

Rehearing Denied April 30, 1987.

Jim Echols, Saunders, Schmidt, Echols &
Weathers, Tyler, for appellants.

Richard Brooks Hardee, Hardee & Hind-
man, Tyler, for appellee.

OPINION

RALEIGH BROWN, Justice (Retired),
Sitting by Assignment.

This is an appeal from the rendition of a
declaratory judgment. Ernestlene Rob-
bins, widow of Harvey Robbins, brought
suit against his six children from a previ-
ous marriage to determine the status of
153,150 shares of stock owned by Harvey
as his separate property before death.

Harvey died intestate. The County Court at Law No. 2 of Smith County held that Ernestlene was entitled to receive 75,499.73 shares as her community interest in the stock. The children appeal. We reverse the judgment of the trial court and remand the cause for a new trial.

Harvey Robbins and Ernestlene Robbins were married on June 10, 1964. At the time of their marriage, Harvey owned substantially all of the stock of Lakeside Telephone Company (Lakeside). On January 10, 1983, Harvey traded his shares of Lakeside stock in exchange for 153,150 shares of Continental Telecom, Inc. (Contel) common stock. The court found that the value of Contel stock at the time of this trade was $18.625 per share for a total value of $2,848,590.00.

Harvey died on December 3, 1983. One of his children, Frank Harvey Robbins, was appointed and qualified as administrator of the estate. The administration was opened and was pending in the Constitutional County Court of Smith County until it was transferred to the County Court at Law No. 2 of Smith County when the present action was filed.

Harvey's widow, Ernestlene, brought the instant suit pursuant to the Uniform Declaratory Judgments Act, TEX.CIV.PRAC. & REM.CODE ANN. secs. 37.001–37.011 (Vernon 1986). In her petition, Ernestlene alleged alternatively that: (1) Lakeside was the alter ego of Harvey Robbins and the increase in value of Lakeside stock during the marriage of Harvey and Ernestlene was community property; (2) the community estate was entitled to shares of Contel stock equal to ninety percent (90%) of the increase in value of Lakeside stock; (3) the community estate was entitled to the income and increase in value of Contel stock; or (4) the community estate was entitled to reimbursement in an amount equal to ninety percent (90%) of the increase in value of Lakeside stock during marriage. Ernestlene also sought a declaration that she was entitled to one-half of the value of gifts or advancements made to the children by Harvey from community property and funds.

The court, sitting without a jury, found that Lakeside was the alter ego of Harvey and that Ernestlene was entitled to receive 75,499.73 shares of Contel stock as her community interest derived from the trade of Lakeside stock. The court also concluded that any transfers of money and personal property from Harvey to his children: (1) were gifts rather than advancements; (2) did not defraud Ernestlene; and (3) need not be accounted for.

The thrust of appellants' Points of Error Nos. 1, 2, and 3 is that there is no evidence or, alternatively, insufficient evidence to support the trial court's findings that Lakeside was the alter ego of Harvey Robbins.

We will first consider appellants' no evidence point. In reviewing the legal or factual sufficiency of the evidence supporting a trial court's findings of fact, we apply the same standard as is applied by a court reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a special issue. *Raposa v. Johnson,* 693 S.W.2d 43, 45–46 (Tex.App.—Fort Worth 1985, writ ref'd n.r.e.); *Okon v. Levy,* 612 S.W.2d 938, 941 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). In determining a no evidence point, we must consider only the evidence and inferences which tend to support the finding of the court and disregard all evidence and inferences to the contrary. *International Armament Corporation v. King,* 686 S.W.2d 595, 597 (Tex.1985); *Stodghill v. Texas Employers Insurance Association,* 582 S.W.2d 102, 103 (Tex.1979); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (Tex. 1951). If there is any evidence of probative force to support the court's finding, the no evidence point must be overruled, and the finding upheld.

In *Castleberry v. Branscum,* 721 S.W.2d 270, 271–72 (Tex.1986), the Supreme Court, considering the alter ego doctrine and whether the corporate form should be disregarded, stated:

We disregard the corporate fiction, even though corporate formalities have been observed and corporate and individual property have been kept separately, when the corporate form has been used

as part of a basically unfair device to achieve an inequitable result. [Footnote omitted] *Bell Oil & Gas Co. v. Allied Chemical Corp.*, 431 S.W.2d [336] at 340. Specifically, we disregard the corporate fiction:

    (1) when the fiction is used as a means of perpetrating fraud; [Footnote omitted]

    (2) where a corporation is organized and operated as a mere tool or business conduit of another corporation;

    (3) where the corporate fiction is resorted to as a means of evading an existing legal obligation;

    (4) where the corporate fiction is employed to achieve or perpetrate monopoly;

    (5) where the corporate fiction is used to circumvent a statute; and

    (6) where the corporate fiction is relied upon as a protection of crime or to justify wrong. [Footnote omitted]

*Pacific American Gasoline Co. of Texas v. Miller*, 76 S.W.2d 833, 851 (Tex.Civ. App.—Amarillo 1934, writ ref'd). *See also Roy E. Thomas Const. Co. v. Arbs*, 692 S.W.2d 926, 938 (Tex.App.—Ft. Worth 1985), writ ref'd n.r.e. per curiam, 700 S.W.2d 919 (Tex.1985); *Roylex, Inc. v. Langson Bros. Const. Co.*, 585 S.W.2d 768, 771 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.); *Wolf v. Little John Corp. of Liberia*, 585 S.W.2d 774, 778 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.); *Sutton v. Reagan & Gee*, 405 S.W.2d 828, 837 (Tex. Civ.App.—San Antonio 1966, writ ref'd n.r.e.).

Many Texas cases have blurred the distinction between alter ego and the other basis for disregarding the corporate fiction and treated alter ego as a synonym for the entire doctrine of disregarding the corporate fiction. *See, e.g., William B. Roberts, Inc. v. McDrilling Co.*, 579 S.W.2d 335 (Tex.Civ.App.—Corpus Christi 1979, no writ); *Dunn v. Growers Seed Ass'n*, 620 S.W.2d 233, 236–37 (Tex. Civ.App.—Amarillo 1981, no writ). However, as *Pacific American Gasoline Co. of Texas v. Miller* indicates, alter ego is

only one of the basis for disregarding the corporate fiction: "where a corporation is organized and operated as a mere tool or business conduit of another corporation."

Alter ego applies when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice. *First Nat. Bank in Canyon v. Gamble*, [134 Tex. 112] 132 S.W.2d 100, 103 (Tex. 1939). It is shown from the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes. *See Lucas v. Texas Industries, Inc.*, 696 S.W.2d 372, 374 (Tex.1984); *Gentry v. Credit Plan Corp. of Houston*, 528 S.W.2d [571] at 573–75. Alter ego's rationale is: "if the shareholders themselves disregard the separation of the corporate enterprise, the law will also disregard it so far as necessary to protect individual and corporate creditors." Ballantine, *Corporations* sec. 123 at 294 (1946).

■ In *Zisblatt v. Zisblatt*, 693 S.W.2d 944 (Tex.App.—Fort Worth 1985, writ dism'd), the Fort Worth Court of Appeals approved the application of the alter ego doctrine to a divorce action where a spouse attempted to change the character of earned income by forming a corporation and then depositing the income into corporate accounts. The court held that such actions were "clearly a fraud on the rights of the community." See also *Uranga v. Uranga*, 527 S.W.2d 761, 765 (Tex. Civ.App.—San Antonio 1975, writ dism'd). We are not aware of any case in which the alter ego doctrine has been applied to determine the status of a decedent's property; however, we conclude that the well-settled rules of law set forth above should be applied to govern such situations. Com-

pare *Trawick v. Trawick*, 671 S.W.2d 105 (Tex.App.—El Paso 1984, no writ).

■■■ The alter ego theory will not be utilized to disregard the corporate entity unless: (1) it is made to appear that there is such a unity that the separateness of the corporation has ceased to exist; and (2) the facts are such that an adherence to the fiction of the separate existence of the particular corporation would, under the particular circumstances, promote injustice. *Castleberry v. Branscum*, supra at 272. See also *Aztec Management and Investment Co., Inc. v. McKenzie*, 709 S.W.2d 237, 239 (Tex.App.—Corpus Christi 1986, no writ); *Roy E. Thomas Const. Co. v. Arbs*, 692 S.W.2d 926, 938 (Tex.App.—Fort Worth), writ ref'd n.r.e. per curiam, 700 S.W.2d 919 (1985); *Mortgage and Trust, Inc. v. Bonner & Co., Inc.*, 572 S.W.2d 344, 349 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). The courts of this State have been reluctant to pierce the corporate veil and impose personal liability upon an individual (such as its chief executive officer and controlling stockholder) thereby destroying an important fiction under which so much of the business of the country is conducted and have done so only under compelling circumstances. *Aztec Management and Investment Co., Inc. v. McKenzie*, supra at 239. See also *Torregrossa v. Szelc*, 603 S.W.2d 803, 804 (Tex.1980); *Bell Oil & Gas Company v. Allied Chemical Corporation*, 431 S.W.2d 336, 340 (Tex. 1968); *Pace Corporation v. Jackson*, 155 Tex. 179, 284 S.W.2d 340, 351 (1955).

■■■ The domination of corporate affairs by a sole stockholder will not in itself justify imposition of personal liability. *Zisblatt v. Zisblatt*, supra at 950; *Roy E. Thomas Const. Co. v. Arbs*, supra at 938; *Tigrett v. Pointer*, 580 S.W.2d 375, 381 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r. e.); *Goetz v. Goetz*, 567 S.W.2d 892, 896 (Tex.Civ.App.—Dallas 1978, no writ). Neither will the mere unity of financial interest justify a disregard of the corporate entity. *Zisblatt v. Zisblatt*, supra at 950; *Roy E. Thomas Const. Co. v. Arbs*, supra at 938.

In the instant case, Ernestlene testified that Lakeside was "Harvey's life." Harvey's longtime general commercial manager, Mary Nell Kirk, testified that Harvey "was Lakeside Telephone Company.... He was a workaholic to the fact that Lakeside Telephone Company was his life." Scott Pace, a certified public accountant and expert witness for Ernestlene, testified that, in his opinion, "Lakeside Telephone system and Harvey Robbins were basically the same." Considering only the evidence which tends to support the finding and disregarding all contrary evidence, we hold that there is some evidence to support the trial court's findings that Lakeside was the alter ego of Harvey.

We next consider appellants' contention that the evidence was factually insufficient to sustain the trial court's findings that Lakeside was the alter ego of Harvey. In deciding an insufficiency of the evidence point, we are required to consider and weigh all the evidence in the case and to set aside the verdict and remand the cause for a new trial if we conclude that the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986); *In re King's Estate*, supra at 661. If we sustain a factual insufficiency point, we are now required by the recent holding in *Pool v. Ford Motor Co.* to reveal our mental processes to be certain that the requirements of *In re King's Estate* have been followed. See *Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986); *ALM v. Aluminum Company of America*, 717 S.W.2d 588 (Tex.1986).

The trial court made the following findings of fact pertinent to the similarity of Harvey and Lakeside:

7. From June 10, 1964 to January, 1983, Harvey Robbins was the Chairman of the Board of Directors, President, made all major decisions, formulated all major policies, and implemented major policies and decisions for Lakeside Telephone Company.

8. Between June 10, 1964 and January, 1983, community property of Harvey and

Ernestlene Robbins was used for the operation, expansion and growth of Lakeside Telephone Company.

9. Harvey Robbins owned and exercised complete control over Lakeside Telephone Company during the period of his marriage to Ernestlene Robbins which spanned more than 18½ years.

However, there is considerable, if not overwhelming, evidence in the record that Lakeside and Harvey were distinct and separate entities. Testimony was elicited from several witnesses, including Ernestlene, to the effect that: (1) Lakeside was conducted as a corporation and corporate formalities were observed by the directors; (2) Lakeside's assets were never intermingled with Harvey's personal assets; (3) Lakeside did not furnish any personal services or goods to Harvey with the exception of an automobile used at least partly for business purposes; (4) Lakeside owned all of the assets which were used in the business; (5) Lakeside's corporate bank accounts were kept separate from Harvey's individual bank accounts and the funds were never intermixed; (6) the corporation paid its own taxes and had a tax number separate from Harvey's social security number; and (7) employees of Lakeside were employed by the corporation and not by Harvey.

The only evidence contravening such testimony is the conclusionary statements of several witnesses that Harvey "was Lakeside Telephone Company"; "Lakeside Telephone Company was his life"; and "Lakeside Telephone system and Harvey Robbins were basically the same." There is also considerable evidence that Harvey took a very active part in the management of Lakeside and worked long hours towards its success. However, the domination of corporate affairs, even by a sole stockholder,[1] will not in itself justify piercing the corporate veil. *Zisblatt v. Zisblatt,* supra at 950; *Roy E. Thomas Const. Co. v. Arbs,* supra at 938; *Tigrett v. Pointer,* supra at 381; *Goetz v. Goetz,* supra at 896.

The instant case is clearly distinguishable from *Zisblatt v. Zisblatt,* supra at 958. In *Zisblatt,* the errant spouse formed a corporation to specifically defraud the rights of the community estate. Here, Harvey Robbins merely dominated the corporate affairs of Lakeside and worked long hours to insure its success. We hold that the evidence in the record is factually insufficient to establish that there was such a unity between Lakeside and Harvey that the separate existence of the corporation had ceased. Compare *Aztec Management and Investment Co., Inc. v. McKenzie,* supra at 239; *Roy E. Thomas Const. Co. v. Arbs,* supra at 938; *Mortgage and Trust, Inc. v. Bonner & Co., Inc.,* supra at 349–51. Since the evidence was factually insufficient to show a unity between Lakeside and Harvey, the alter ego theory was not established. See *Humphrey v. Humphrey,* 593 S.W.2d 824, 826 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ dism'd); *Goetz v. Goetz,* supra at 895. Appellants' second point of error is sustained.

We need not consider appellants' remaining points of error. The judgment of the trial court is reversed, and the cause is remanded for a new trial.

1. We note that although Harvey owned the majority of Lakeside stock, two other shareholders each owned one share apiece.