WESWARE, INCORPORATED, Appellant,

v.

STATE of Texas, Appellee.

No. 12011.

Court of Civil Appeals of Texas, Austin.

Dec. 20, 1972.

Stephen M. Orr, Austin, for appellant.

Crawford C. Martin, Atty. Gen. of Texas, Van Thompson, Jr., Thomas A. Fry, III, Asst. Attys. Gen., Austin, for appellee.

PHILLIPS, Chief Justice.

This case was brought by the Attorney General of Texas on behalf of the State of Texas wherein both permanent and temporary injunctive relief were sought against Wesware, Incorporated for violation of Article 5069–10.01 et seq., Vernon's Ann. Civ.St., The Texas Deceptive Trade Practices Act, for operating a "pyramid selling scheme".

The district court issued a temporary injunction enjoining Wesware from the operation of a "pyramid selling scheme" in violation of the Texas Deceptive Trade Practices Act. It is from this interlocutory order that Wesware has perfected its appeal to this Court.

We affirm.

■ In reviewing the facts of this case we are ever mindful that in order to obtain relief by temporary injunction, a party need not adduce proof that he will prevail on a final hearing on the merits. Sun Oil Company v. Whitaker, 424 S.W.2d 216 (Tex.1968). The trial court's judgment in either granting or denying an application for temporary injunction should not be reversed unless it is clearly shown to be an abuse of discretion. Thus the trial court may grant an order of temporary injunction where the petition alleges a cause of action and the evidence adduced tends to sustain it. Texas Foundries, Inc. v. International Moulders & Foundry Workers Union, 151 Tex. 239, 248 S.W.2d 460 (1952); Southwestern Greyhound Lines, Inc. v. Railroad Commission, 128 Tex. 560, 99 S.W.2d 263 (1936). The trial court is endowed with broad discretion to grant or deny an application for temporary injunction, and the issue on appeal is limited to the narrow question of whether or not the trial court's action constitutes a clear abuse of that discretion. Janus Films, Inc. v. City of Ft. Worth, 163 Tex. 616, 358 S.W.2d 589 (1962).

The facts before us are these: Appellant offers a set of stainless steel cookware for sale at $1000. Included in this price is a motivational kit containing twelve cassette tapes and a cassette tape recorder along with various printed matter. It should be noted here that the temporary injunction before us does not prohibit any dealer from selling the cookware nor is the value of the cookware questioned in any way.

In order to become a "dealer" for Appellant, a person must secure three qualifying sales for the dealer who sponsored him into the plan, one of which qualifying sales can be to himself. Once these qualifying sales have been obtained, the person becomes a dealer and is entitled to receive a $400 commission on each sale thereafter. However, he receives no commission on the qualifying sales. These go to his sponsoring dealer. The persons to whom these qualifying sales are made can also become dealers by securing three qualifying sales, the commission on which sales goes to the original sponsoring dealer (not to the person who recruited them) and so on down the line. There is no limitation on where persons may be recruited. There is no limitation upon how many sales can be made. Hence, the result of this scheme was summarized by one witness as follows:

> "Q Under the plan as you understand it, was it conceivable that after a pe-

riod of time, you might begin to receive commission checks, or commissions for sales made by people in other states whom you might not even know?

"A Yes. It was mentioned by Mr. Mendenthal that he was receiving checks from Washington State where he had originally entered the program, but he didn't know the people and didn't know the people that sold them and so on. These checks were coming in regularly, and this is where he is making his money."

Appellant's first two points of error are evidentiary and to the effect that the trial court erred in granting the temporary injunction because there was either insufficient evidence or no evidence to sustain a finding of a violation of the Texas Deceptive Trade Practices Act. Its third point is that a temporary injunction, as granted, is not authorized under the Act. We cannot agree with appellant here and must overrule these points.

The Texas Deceptive Trade Practices Act, Article 5069 in Section 10.04(b) authorizes the Attorney General to bring such actions as follows:

"(b) Whenever the Attorney General has reason to believe that any person is engaging in, has engaged in, or is about to engage in any act or practice declared by Article 10.02 of this Chapter to be unlawful, and that proceedings would be in the public interest, he may bring an action in the name of the state against the person to restrain by temporary or permanent injunction the use of such method, act, or practice. Venue in such an action shall be as provided in Section (a) of this Article. The court is authorized to issue temporary or permanent injunctions to restrain and prevent violations of this chapter, and such injunctions shall be issued without bond."

The basis of the State's suit rests upon two grounds, first, the marketing plan of Appellant is a chain-referral or pyramid selling scheme which is inherently fraudulent, unworkable, and patently impossible, and, hence, is deceptive per se; and, secondly, that the scheme is in the nature of a lottery, is contrary to public policy, and, as such, constitutes a deceptive trade practice. The state contends that appellant's scheme of operation is enjoinable under the Act on either or both of these grounds.

■ Appellant contends that since the plan is fully explained there is no deception as to its nature or the likelihood of market saturation and that the only element of chance involved is that which is common to any business venture which depends on the sales of goods. Appellant asserts that any person who sets out to be a salesman of cookware under any plan is to some extent taking a chance since he may not be able to sell the product. In support of this position, appellant contends that the plan contemplates that no investment or purchase of goods is required to become a dealer; that the plan requires that dealers and dealer-trainees put forth considerable effort in selling cookware in order to make money; that no claims are made that a profit will be realized or cookware acquired without cost merely by referring names to the company; that it is made clear that the pots and pans must be sold if a profit is to be gained; that continued recruitment of persons as dealer-trainees is not necessary to everyone making a profit; only sales of cookware are necessary.

We cannot agree with appellant here and must hold that under the facts of this case there was sufficient evidence of both deceptive trade practices and of a lottery before the trial court and that the court did not abuse its discretion in issuing the temporary injunction.

Article 5069–10.02 V.C.S. provides as follows:

"(a) False, misleading, or deceptive acts or practices in the conduct of any

trade or commerce are hereby declared unlawful.

"(b) It is the intent of the legislature, that in construing Section (a) of this Article, the courts, to the extent possible, will be guided by Section (b) of Article 10.01 of this Chapter and the interpretations given by the Federal Trade Commission and the Federal Courts to Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C.A. 45(a)(1) . . . ."

The similarity of Section 10.02(a) to Section 5(a)(1) of the Federal Trade Commission Act is obvious. It is the intent of the Legislature in Section 10.02(b) to rely on the vast body of law heretofore promulgated by the federal courts and the F.T.C. by providing that existing interpretation by these entities shall be used "to the extent possible" in construing Section 10.02(a).

The criteria of "deceptive acts or practices" is settled under Section 5(a)(1) of the F.T.C. Act and is stated in the terms of *capacity* to deceive rather than actual deception. Goodman v. F. T. C., 244 F.2d 584 (9th Cir. 1957); American Life & Acc. Insurance Company v. F. T. C., 255 F.2d 289 (8th Cir. 1958).

The plan or scheme before us contemplates pyramiding one group of sales upon others in a manner that has been roundly condemned and held illegal by both the federal and state courts. See Securities & Exchange Commission v. W. J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244; Blachly v. United States, 380 F.2d 665 (5th Cir. 1967); Fabian v. United States, 358 F.2d 187 (8th Cir. 1966); United States v. Armantrout, 411 F.2d 60 (2nd Cir. 1969); State ex rel. Turner v. Koscot Interplanetary, Inc., 191 N.W.2d 624 (Iowa, 1971); State by Lefkowitz v. I. T. M., Inc., 52 Misc.2d 39, 275 N.Y.S.2d 303 (1966).

The scheme has also been called a "referral sales" plan and consequently proscribed as fraudulent conduct. State ex rel. Turner v. Koscot Interplanetary, Inc., *supra*, citing numerous cases in support. It has been held that the fact that the first few participants could possibly earn something is immaterial because, ultimately, the plan will be impossible as a practical matter for the great majority of the public. State v. Lefkowitz v. I. T. M., Inc., *supra*.

We also hold that the scheme is proscribed because it constitutes a lottery. Article 654, Texas Penal Code, Vernon's Ann., prohibits lotteries without defining the term. Thus the common law and general usage define the term. State v. Randle, 41 Tex. 292. Attorney General Opinion C–619 (1966); 37 Tex.Jr.2nd, Section 1, p. 493. A lottery has three essential elements: a prize, award of the prize by chance, and the payment by the participants of consideration for the privilege or right of participating. City of Wink v. Griffith Amusement Co., 129 Tex. 40, 100 S.W. 695 (1936).

The elements of consideration and award are present in the plan before this Court. The element of chance is also present as the sponsoring-participant gambles for the recovery of his investment on the motivation, success and efforts of each of his recruits over whom he has no control in any real sense. This fact by itself provides the essential element of chance which condemns this scheme as a lottery. Public Clearing House v. Coyne, 194 U.S. 497, 24 S.Ct. 789, 48 L.Ed. 1092 (1904); People of the State of Michigan v. Koscot Interplanetary, Inc., *supra*; Sherwood & Roberts-Yakima, Inc. v. Leach, 67 Wash.2d 630, 409 P.2d 160 (S.C.Wash.1965).

The Federal Trade Commission takes the position that such schemes are illegal as a lottery and deceptive trade practice. F.T.C. v. International Safe-T-Trac, 3 FTC Trade Reg. Rptr. Para 19,226. The Supreme Court of the United States long ago upheld that portion of the F.T.C. ruling that the sale of merchandise through the use of a lottery constituted a "deceptive

trade practice." F. T. C. v. R. F. Keppel & Brothers, Inc., 291 U.S. 304, 54 S.Ct. 423, 78 L.Ed. 814 (1934).

■ We also hold in reply to appellant's points three, four and five that the order of temporary injunction entered fully complies with the requirements of Rule 683 [1], Texas Rules of Civil Procedure, in that the acts prohibited therein are sufficiently stated and are not described by reference to the petition; do not go beyond the scope of the Texas Deceptive Trade Practices Act; nor destroy the status quo.

The prohibitory paragraphs of the temporary injunction in this case enjoin appellant, in effect, from the operation of a lottery in numbered paragraph (1), and from the operation of a referral selling or pyramid sales scheme in numbered paragraph (2). These prohibitory provisions are drawn from appropriate parts of Recent Federal Trade Commission Decision and Orders in similar cases. Bestline Products Corporation and Bestline Products, Inc., FTC Dkt. No. C–1986 (July 22, 1972), 3 Trade Reg. Repts. Paras. 19,626, 19,761; International Safe-T-Trac, Inc., FTC Dkt. No. 8823 (September 1, 1971), 3 Trade Reg. Repts. paragraphs 19,226, 19,501, 19,-700 and 19,787; Koscot Interplanetary, Inc., FTC File No. 6923102, 3 Trade Reg. Repts. paragraph 19,576.

The injunction before us prohibits any marketing plan wherein compensation or profit inuring to the participants therein is dependent on the elements of chance dominating over the skill or judgment of the participants. It also prohibits the operation of any plan wherein the financial gains to the participants are dependent upon the participant's successive recruitment of other participants.

■ As the Supreme Court held in San Antonio Bar Assn. v. Guardian Abstract & Title Co., 291 S.W.2d 697 (Tex.1956), the injunction decree must be as definite, clear and precise as possible and *when practicable* it should inform the defendant of the acts he is restrained from doing, without calling on him for inferences or conclusions about which persons might well differ and without leaving anything for further hearing. But obviously the injunction must be in broad enough terms to prevent repetition of the evil sought to be stopped. It should not be greatly concerned with rights of the defendants that are asserted largely in the abstract. Otherwise it would probably take longer to write the decree than it would to try the case and the injunction might well become unintelligible and self-destructive. Also see this Court's opinion in REI Industries, Inc. v. State, 477 S.W.2d 956 (Tex.Civ.App.1972, no writ).

The gravaman of this whole scheme is chance and the pyramiding of chance upon chance. This the injunction has sought to quell and has done so with reasonable certainty and clarity.

■ There is no requirement that the prohibitory language of an injunction under the Texas Trade Practices Act must track any of the statutory language of the Act. The Act prohibits, generally, "false, misleading and deceptive" acts and practices in trade or commerce. The prohibitory language of the temporary injunction herein is clearly directed at mischief within the terms of the statute.

We cannot agree with appellant's contention that the order of temporary injunction herein is contrary to the mandatory requirements of Rule 683 T.R.C.P. because it

---

1. Rule 683. Form and Scope of Injunction or Restraining Order

Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

makes reference to the petition in this cause. Here reference was made to the petition in the statement of reasons in the order for a more detailed description of the illegal activities, not in the prohibitory paragraphs themselves. REI Industries, Inc. v. State, *supra*.

Finally, appellant contends that the temporary injunction grants everything the state could receive on a final hearing and does more than to preserve the status quo, hence, was improvidently granted. We overrule this contention as it is well settled that the status quo cannot be a condition of affairs in violation of law. Rattikin Title Co. v. Grievance Committee of State Bar of Texas, 272 S.W.2d 948 (Tex. Civ.App.1955, no writ). Also see this Court's recent opinion in Wesware, Incorporated v. Blackwell, Tex.Civ.App., 486 S. W.2d 599 (1972), decided October 25, 1972.

The judgment of the trial court is affirmed.

Affirmed.