**Denzil COOPER and Stephanie Cooper, Appellant,**

v.

**REPUBLICBANK GARLAND, Appellee.**

**No. 05–84–00691–CV.**

Court of Appeals of Texas, Dallas.

July 22, 1985.

**630**

Thomas V. Murto, III, Kenneth F. Nye, Dallas, for appellant.

Holt Irby, Garland, for appellee.

Before AKIN, GUILLOT and HOWELL, JJ.

AKIN, Justice.

Denzil Cooper and Stephanie Cooper appeal from a take-nothing judgment rendered in their suit against RepublicBank Garland. The Coopers sued the bank seeking the return of funds paid pursuant to an installment contract. Additionally, the Coopers sought declaratory relief in the nature of an offset against, or cancellation of, the remaining balance due under the contract. Trial was to the court. After judgment, the trial court filed findings of fact and conclusions of law at the Coopers' request. On appeal the Coopers contend that the trial court erred in concluding that their suit against the bank was barred by limitation.[1] We hold that limitation bars an affirmative action by the Coopers to recover funds that they had previously paid to the bank pursuant to the installment contract. We also hold, however, that limitation does not bar the Coopers from asserting certain defenses that may entitle them to an offset against some or all of the remaining balance due under the contract. Accordingly, we affirm the trial court's judgment in part and reverse in part and remand for trial of the Coopers' offset claim.

On May 27, 1978, the Coopers contracted with Seaside Pools, Inc. for the construction of a swimming pool in their backyard. At that time the Coopers entered into a "Home Improvement Repair Installment Contract and Promissory Note" (the "contract") with Seaside, which shortly thereafter assigned the contract to First National Bank of Garland. The bank's name was later changed to RepublicBank Garland.

Pursuant to the contract, the Coopers commenced making monthly installment payments in July 1978.[2] The pool was delivered to the Coopers on August 15, 1978. Both before and after delivery the Coopers discovered various defects in the pool. The Coopers demanded that Seaside remedy these defects but Seaside failed to do so

---

1. In view of our disposition of this appeal, we need not address the other points of error raised by the Coopers.

2. The payments were initially made to First National Bank of Garland. After the bank changed hands, the Coopers made their payments to RepublicBank Garland.

satisfactorily. The Coopers filed suit against Seaside on May 30, 1979, alleging breach of express and implied warranties and violations of TEX.BUS. & COM.CODE ANN. art. 17.50 (Vernon Supp.1985), the Deceptive Trade Practices Act. A nonsuit was granted in this action. On October 18, 1981, the Coopers again sued Seaside for breach of express and implied warranties and violations of the Deceptive Trade Practices Act. The trial court rendered judgment in favor of the Coopers in the amount of $31,800 plus attorney's fees on May 6, 1983. It is undisputed that this judgment against Seaside was never satisfied, in whole or in part. The bank was not a party to either suit against Seaside.

During the pendency of their suits against Seaside, the Coopers continued making the monthly installment payments due under the contract. Upon obtaining judgment against Seaside, the Coopers informed the bank that they were discontinuing their installment payments and demanded the return of all monies previously paid under the contract as well as cancellation of the remaining balance due. The bank replied that if the Coopers failed to make the required payments it would institute foreclosure proceedings. The Coopers then filed the instant action against the bank on June 30, 1983, seeking the return of all monies paid under the contract and a permanent injunction preventing the bank from instituting foreclosure proceedings or taking any other action to collect from the Coopers the balance due under the contract. Thereafter, the bank filed a cross-action against Seaside for indemnity. During the pendency of their action against the bank, the Coopers paid their monthly installment payments into the court's registry. After trial to the court, judgment was rendered that the Coopers take nothing against the bank and that the bank take nothing against Seaside. The trial court concluded that, *inter alia*, the Coopers' suit against the bank was barred by limitation. On appeal the Coopers assert that this conclusion was erroneous as to both their claim for return of monies previously paid and their claim for an offset against, or cancellation of, the remaining balance due.

The Coopers' suit against the bank was based on their unsatisfied final judgment against Seaside coupled with the following provision in the contract:

NOTICE–ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF, RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The Coopers contend that this clause made the bank responsible for their claims against Seaside, which they established by obtaining the unsatisfied $31,800 judgment. They further contend that their cause of action against the bank did not accrue, and thus limitation did not begin to run, until the bank repudiated the contract by refusing to comply with their demands for refund of monies paid under the contract and cancellation of the remaining balance due.[3] Accordingly, the Coopers reason that the trial court erred in concluding that their claim against the bank was barred by limitation.

We turn first to the Coopers' contention that their claim for return of funds previously paid was not barred by limitation. In determining the validity *vel non* of this contention, we must consider the purpose and effect of the contract clause upon which they so heavily rely. This clause, commonly called the "FTC rule", is required to be inserted in all consumer credit contracts. 16 C.F.R. § 433 (1984). Absent the FTC rule, a holder in due course of a

---

**3.** It is undisputed that the above-quoted clause would limit the Coopers' recovery, if any, to such an amount.

consumer credit contract could demand that the buyer/debtor fulfill his duty of payment under the contract regardless of any breach of warranty on the part of the seller. The FTC rule denies to the holder of the contract the benefits which might otherwise be available to him under the holder in due course doctrine. *De La Fuente v. Home Savings Association,* 669 S.W.2d 137, 142 (Tex.App.—Corpus Christi 1984, no writ). The FTC rule thus prevents the occurrence of what the Federal Trade Commission concluded was an unfair and deceptive trade practice—the separation of a buyer's duty to pay from a seller's duty to perform. *See* 40 Fed.Reg. 53,506, 53,524 (1975).

The FTC rule places the holder of the contract in the shoes of the seller. This rule creates no new claims or defenses but merely permits the buyer/debtor to assert against the holder whatever claims or defenses that the buyer/debtor may have against the seller. This has been made clear by the Federal Trade Commission in its guidelines concerning the FTC Rule:

> It is also important to note that the Rule does not create new rights or defenses. The words 'Claims and Defenses' which must appear in the Notice are not given any special definition by the Commission. The phrase simply incorporates those things which, as a matter of other applicable law, constitute legally sufficient claims and defenses in a sales transaction. Appropriate statutes, decisions, and rules in each jurisdiction will control, and the pertinent rules of law and equity, including rules of evidence, procedure, *and statutes of limitations, will continue to apply.*
>
> For example, where a product is sold "as is" and there can be no warranty claim or defense, the Rule would not create one. Where a local jurisdiction has a two-year statute of limitation on contract claims, such claims and defenses would be extinguished after two years.

41 Fed.Reg. 20,022, 20,023–24 (1976) (emphasis added). The Federal Trade Commission has also stated, in its "Statement of Basis and Purpose" of the FTC rule, that the rule "allows the consumer to assert his *sale-related* claims and defenses against the holder of the credit obligation." 40 Fed.Reg. 53,506, 53,524 (1975) (emphasis added).

The Corpus Christi Court of Appeals, construing a consumer credit contract containing the FTC rule, concluded that the contract granted the buyer the right to assert against the seller as well as any holder of the contract "all claims and defenses *arising out of the sale." Hinojosa v. Castellow Chevrolet Oldsmobile, Inc.,* 678 S.W.2d 707, 710 (Tex.App.—Corpus Christi, 1984, no writ) (emphasis added). Furthermore, other jurisdictions that have considered the question have concluded that the FTC rule simply places the holder in the shoes of the seller and does not create any new claims, defenses, or obligations. *See First New England Financial Corp. v. Woffard,* 421 So.2d 590, 593 (Fla.Dist.Ct.App.1982); *Xerographic Supplies Corp. v. Hertz Commercial Leasing Corp.,* 386 So.2d 299, 300 (Fla.Dist.Ct.App. 1980); *General Motors Acceptance Corp. v. Daniels,* 377 So.2d 346, 349 (La.1979); *Aillet v. Century Finance Co.,* 391 So.2d 895, 897 (La.App.1980); *Thomas v. Ford Motor Credit Co.,* 48 Md.App. 617, 429 A.2d 277, 282 (1981).

■ It follows, therefore, that any claim which the Coopers could have asserted against the bank as a result of the inclusion of the FTC rule in the contract must necessarily have been a claim arising out of the sale of the pool to them by Seaside. In the fact situation before us, for example, the Coopers could have sued the bank for Seaside's breach of warranties concerning the pool. The Coopers, however, contend that the FTC rule, when coupled with their unsatisfied judgment against Seaside, entitles them to recover the damages prayed for in their suit against the bank. We do not agree. To hold as the Coopers would have us do would not simply place the bank in Seaside's shoes with respect to the Coopers' sale-related claims but would, in effect, make the bank a guarantor of Sea-

side's liability. Such a holding would, contrary to the purpose and effect of the FTC rule as discussed herein, expose the bank to risks *greater* than those to which Seaside was exposed in several ways. First, the bank would be required to compensate the Coopers for the damages caused by Seaside without having an opportunity to appear in court and present a defense. Second, if the Coopers' cause of action against the bank did not accrue at the same time as their cause of action against Seaside but rather at the time that the bank repudiated the Coopers' demands for the return of monies paid under the contract and cancellation of the balance due, the bank would be subject to liability for a *longer* period than would Seaside. Such results would be untenable.

■  Moreover, even if we construe the Coopers' action against the bank as one for breach of warranties made by Seaside, such an action is barred by limitation. In its brief the bank asserts that the applicable statute of limitation is set forth in section 2.725 of the Texas Business & Commerce Code (the "code"), which provides in pertinent part:

(a) An action for breach of any contract for sale must be commenced *within four years after the cause of action has accrued.* By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

(b) *A cause of action accrues when the breach occurs,* regardless of the aggrieved party's lack of knowledge of a breach. *A breach of warranty occurs when tender of delivery is made,* except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered. [emphasis added]

The pool was delivered to the Coopers on August 15, 1978. Consequently, their suit against the bank, filed on June 30, 1983, is barred by section 2.725 if it is applicable in this case. This statute of limitation applies, however, only if the Coopers' pool falls within the definition of "goods" found in section 2.105 of the code.[4] We need not pass on the question of whether the Coopers' pool is "goods," however, because their cause of action against the bank, even if construed as one for breach of warranties, is barred by limitation regardless of the applicability of section 2.725.

If the swimming pool is not "goods," any claim for breach of express or implied warranties which the Coopers may have had against the bank was subject to a four-year statute of limitation. TEX.REV.CIV. STAT.ANN. art. 5527, *amended by* Act of June 13, 1979, ch. 716, § 2, 1979 Tex.Gen. Laws 1769.[5] *See Certain-Teed Products Corp. v. Bell,* 422 S.W.2d 719, 721 (Tex. 1968); *Miller v. Kountze Corporate*

---

4.  (a) "Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Chapter 8) and things in action. "Goods" also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the section on goods to be severed from realty (Section 2.107).

   \*     \*     \*     \*     \*     \*

5.  Art. 5527, prior to its amendment effective August 27, 1979, provided in pertinent part:
    There shall be commenced and prosecuted within four years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:

1.  Actions for debt where the indebtedness is evidenced by or founded upon any contract in writing.

We conclude that this pre-amendment version of art. 5527 is applicable in the instant case because: (1) this version was in effect on May 30, 1979, which we have concluded is the date on or before which the Coopers' cause of action for breach of warranties accrued; and (2) an amendment to a limitation statute applies to a pre-existing cause of action only if its terms clearly show a legislative intent that it is to be retroactive. *Highland Park Independent School District v. Loring,* 323 S.W.2d 469, 470 (Tex.Civ. App.—Dallas, 1959, no writ). *See Doran v. Compton,* 645 F.2d 440 (5th Cir.1981). The terms of the amendment display no such intent.

*School District,* 54 S.W.2d 344, 348 (Tex. Comm'n App.1932, holding approved). The Coopers' cause of action for breach of express warranty accrued, and thus limitation began to run, when the warranty was breached. The Coopers' cause of action for breach of implied warranty accrued when they discovered or should have discovered the injury. *Puretex Lemon Juice, Inc. v. S. Riekes & Sons of Dallas, Inc.,* 351 S.W.2d 119, 122–23 (Tex.Civ.App.—San Antonio 1961, writ ref'd n.r.e.). We recognize that because the Coopers' suit against the bank was not brought in the posture of an action for breach of warranties, the evidence adduced at trial did not clearly establish when their cause of action for breach of warranties accrued. Nevertheless, it is apparent to us that their cause of action accrued on or before May 30, 1979, the date on which the Coopers initially filed suit against Seaside alleging breach of express and implied warranties. Consequently, we hold that the Coopers' claim against the bank for recovery of funds previously paid, filed more than four years later on June 30, 1983, is barred by limitation.

■ In their suit against the bank, the Coopers also sought declaratory relief in the nature of an offset against, or cancellation of, the remaining balance due on the contract. On appeal they contend that the trial court erred in concluding that this claim was barred by limitation. We agree. As the Commission of Appeals stated:

> It is the law of this state that where the subject-matter of a defense interposed by the defendant constitutes an independent cause of action which does not go to the foundation of the plaintiff's demand, it cannot effect a reduction of the amount of the plaintiff's recovery except by way of set-off, and the statutes of limitation are available to the plaintiff in respect to such defense. [Citations omitted]. On the other hand, if the subject-matter of the defense be of an intrinsically defensive nature, which, if given effect, will

operate merely as a negation of the plaintiff's asserted right to recover, or in abatement, either wholly or partially, of the amount claimed, the statute of limitation does not apply.

*Morris-Buick Co. v. Davis,* 127 Tex. 41, 91 S.W.2d 313, 314 (Tex.Comm'n App.1936, opinion adopted). *See also Bodovsky v. Texoma National Bank of Sherman,* 584 S.W.2d 868 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.); *Hennigan v. Heights Savings Association,* 576 S.W.2d 126 (Tex. Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.). This rule rests upon sound policy considerations:

> Limitation is applicable to the remedy and not the right. The right, as distinguished from the remedy, is often available in equity as a defense, when the remedy for its enforcement would be barred, if asserted affirmatively in a legal action.

*Shaw v. First State Bank,* 13 S.W.2d 133, 137 (Tex.Civ.App.—Fort Worth 1928, no writ). We recognize, of course, that the Coopers were the plaintiffs in their suit against the bank. The Coopers sued, however, because the bank had demanded that they fulfill the terms of the contract or face foreclosure proceedings. Accordingly, we conclude that the Coopers' claim for an offset against, or cancellation of, the remaining balance was of a *defensive* nature. *Murphy v. Boyt,* 180 S.W.2d 199, 204 (Tex. Civ.App.—Austin 1944, writ ref'd w.o.m.). Consequently, limitation does not bar the Coopers from asserting any defenses arising out of the sale and financing of the swimming pool that may entitle them to an offset against, or cancellation of, the remaining balance.[6]

Accordingly, we reverse and remand for trial only the Coopers' offset claim. The trial court's judgment as to the Coopers' claim for the return of funds previously paid pursuant to the contract is affirmed.

Affirmed in part, reversed in part and remanded.

---

6. Because the bank stands in Seaside's shoes, the Coopers may assert against the bank any defenses that they could have asserted against Seaside which arose out of the sale and financing of the pool.