**HOME SAVINGS
ASSOCIATION, Appellant,**

v.

**Louis GUERRA, Sr., Appellee.**

No. 04–86–00003–CV.

Court of Appeals of Texas,
San Antonio.

Oct. 22, 1986.

Rehearing Denied Nov. 20, 1986.

Winifred E. Manning, San Antonio, for appellant.

Peter Torres, Jr., San Antonio, for appellee.

Before ESQUIVEL, TIJERINA * and DIAL, JJ.

OPINION

ESQUIVEL, Justice.

This is an appeal from a judgment against appellant, Home Savings Associa-

tion (HSA), and in favor of appellee, Louis Guerra, Sr. (Guerra). Guerra sued HSA and Modern Builders and Supply (MB & S) to recover for damages which were a result of a home solicitation transaction. Guerra sought damages from the defendants for alleged violations of TEX.BUS. & COM. CODE ANN. § 17.45(5), 17.46(b)(7), 17.-46(b)(12) and 17.50(a)(1), (2), (3) (Vernon Supp.1986) (hereafter DTPA); TEX.REV. CIV.STAT.ANN. art. 5069—6.01, 6.05(7), 13.01 and 13.03(a)(1), (3), (6) (Vernon Supp. 1986). Guerra contracted with Modern Builders and Supply to add rock siding to the Guerra's residence and perform incidental repairs to the existing wood. HSA, as assignee of the retail installment contract, promissory note, contract for labor and materials and trust deed, was named as a co-defendant. Guerra's cause of action against Modern Builders and Supply was severed prior to trial. The jury answered all seventeen special issues submitted to it in favor of Guerra. The jury awarded TWENTY-FIVE THOUSAND AND NO/100 DOLLARS ($25,000.00) as a reasonable and necessary cost to Guerra in order to repair the construction work that Modern Builders and Supply was contracted to perform; awarded TEN THOUSAND AND NO/100 DOLLARS ($10,000.00) to Dominga Guerra for mental anguish; awarded SEVENTY-FIVE THOUSAND AND NO/100 DOLLARS ($75,000.00) as damages against HSA: as well as attorney's fees to Guerra in the following amounts:

1. TEN THOUSAND AND NO/100 DOLLARS ($10,000.00) for trial of the case,

2. TWO THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($2,500.00) for appeal to the Court of Appeals,

3. TWO THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($2,500.00) for appeal to the Supreme Court of Texas if no writ of error is granted,

4. ONE THOUSAND FIVE HUNDRED AND NO/100 DOLLARS

---

* Associate Justice Tijerina, not participating.

($1,500.00) for appeal to the Supreme Court of Texas if a writ is granted.

HSA moved for judgment non obstante veredicto and tendered to the trial court a motion to disregard the jury's findings to certain special issues. The trial court rendered a judgment against Modern Builders and Supply and HSA holding them jointly and severally liable. The trial court further awarded Guerra actual damages of TWENTY-FIVE THOUSAND AND NO/100 DOLLARS ($25,000.00) against HSA and attorney fees in the amounts found by the jury. The trial court also found the note and trust deed securing Guerra's indebtedness void. HSA filed a motion for new trial which was denied by the trial court.

On appeal, HSA brings the following points of error:

### Point of Error One

The trial court erred in failing to grant Appellant's Motion for Judgment Non Obstante Veredicto because there is no evidence of nor any findings of wrongful acts being committed by any entity other than Modern Builders and Supply.

### Point of Error Two

The trial court erred in awarding Appellee's damages against Appellant and Modern Builders and Supply jointly and severally in the amount of $25,000.00 for the reason there was no evidence of, nor special issue submitted inquiring as to, nor any jury findings of any wrongful acts having being committed by Appellant that were a cause of actual damages allegedly sustained by the Appellees.

### Point of Error Three

The trial court erred in awarding judgment against Appellant in excess of the amounts paid by Appellees to Appellant pursuant to the terms of the subject note; dissolution of the Note, Retail Installment Contract and Liens securing payment of same, and reasonable attorney's fees on appeal for the reason neither Texas law nor Federal law provides a basis for an award in excess of said amounts.

### Point of Error Four

The trial court erred in awarding Appellees attorney's fees for trial of this cause in the amount of $10,000.00 against Appellant and Modern Builders and Supply jointly and severally, for the reason that there is no a basis under Texas law or Federal law for such an award.

### Point of Error Five

The trial court erred in failing to grant Appellant's Motion for Leave to File Trial Amendment to Defendant's First Amended Original Answer for the reason the matters contained therein were admitted into evidence without objection by Appellees and were thus tried by implied consent.

### Point of Error Six

The trial court erred as a matter of law in submitting to the jury over Appellant's objection, Appellees' Special Issue No. 14 inquiring as to what sums of money should be awarded as additional damages against Appellant for the reason that there was no evidence in the record of any wrongful conduct or deceptive trade practice being committed by Appellant. Nor was there any evidence of actual damage to appellees caused by the actions of Appellant. Nor were there any issues requires or submitted by Appellees upon which such submission could be predicated.

### Point of Error Seven

The trial court erred in failing to submit to the jury to find the sum of money paid by Appellees to Appellant under the subject note for the reason said amount is the maximum amount of monetary liability Appellant has to Appellees as a matter of law.

### Point of Error Eight

The trial court erred in failing to submit to the jury Appellant's requested special issues inquiring as to whether Appellant had submitted a notice of negotiation to Appellees for the reason evidence on this issue had been introduced without objection and Appellant was entitled to a jury finding on these issues as a matter of law.

*Point of Error Nine*

The trial court erred in failing to submit Appellant's requested special issues, submitted in proper form, on the defense of estoppel which defense was properly pled by Appellant, and upon which issue evidence was introduced, for the reason Appellant was entitled to such issues as a matter of law.

*Point of Error Ten*

The trial court erred in failing to submit to the jury Appellant's requested special issues on whether Appellees represented to Appellant that Appellees had received oral notice of the right to cancel the contract, for the reason the defense of estoppel had been plead by Appellant and evidence was introduced in support of that defense.

*Point of Error Eleven*

The trial court erred in sustaining Appellees' objection to Appellant's line of questions relating to reliance by Appellant on written representations of Appellees for the reason Appellant had plead estoppel and was entitled to introduce evidence relating to the element of reliance as a matter of law.

*Point of Error Twelve*

The trial court erred in awarding actual damages to Appellees in the amount of $25,000.00 and attorney's fees in the amount of $10,000.00, jointly and severally against Modern Builders and Supply and Appellant, for the reason there is no jury finding of a Home Solicitation Transaction nor is there any finding that Appellant committed any acts prohibited at Art. 5069–13.03 of the Texas Credit Code, nor was there any violation of the act by Appellant as a matter of law.

*Point of Error Thirteen*

The trial court erred in failing to submit to the jury Appellant's requested special issues relating to assignment of the subject paper for the reason such issues contained questions of fact, the answers to which would determine whether or not the trial court could decide as a matter of law that the subject paper had been improperly assigned.

*Point of Error Fourteen*

The trial court erred as a matter of law in submitting Appellees' Special Issue No. 13 inquiring as to whether Modern Builders and Supply assigned the Retail Installment contract prior to midnight of the fifth business day after January 12, 1984 for the reason such issue asks the jury to decide a question of law.

*Point of Error Fifteen*

The trial court abused its discretion when sustaining Appellees' objection to admitting the testimony of Appellant's expert witness for the reason that good cause sufficient to require its submission existed, allowing Appellant's expert to testify would not have operated as a surprise to Appellees, and the trial court's failure to allow such testimony resulted in unfair prejudice to Appellant's defense of the cause.

*Point of Error Sixteen*

The court erred in granting Appellees judgment against Appellant for the reason Appellees failed to request any special issue inquiring into liability or actual damages under any theory of recovery with regard to Appellant.

HSA argues its first eight points of error together and we shall consider them in that manner.

HSA argues that there is no evidence or findings by the jury that it has any liability under the DTPA. Further, 16 CFR § 433.2 (1986) (hereafter the FTC rule) limits the amount a debtor may recover to what he has paid under the contract.

In considering HSA's allegations, we must decide two issues:

1. Does the FTC rule preempt Texas statutes which a debtor may use to obtain a recovery against an assignee for the wrongful acts of the merchant/seller?

2. Does the FTC rule limit the liability of an assignee to a debtor for the wrongful acts of a merchant/seller? In determining assignee's liability, we must consider the pleadings, the FTC rule, the state remedies available to Guerra, and the special issues submitted to the jury.

## THE PLEADINGS

■ Guerra pled HSA as the owner and holder of the note in issue. Guerra alleges that HSA is jointly liable with MB & S under 40 CFR 53524 (1975) (as codified at 16 CFR § 433.1) for unconscionable conduct leading to violations of the Deceptive Trade Practices Act, Consumer Credit Act, Home Solicitation Act and various warranties. While HSA entered a general denial in it first amended original answer, its original counterclaim specifically stated: on or about January 12, 1984, counter-defendant (Guerra) executed and delivered a promissory note to MB & S to pay FIFTEEN THOUSAND EIGHTY-TWO AND 80/100 DOLLARS ($15,082.80) in monthly installments of ONE HUNDRED TWENTY-FIVE AND 69/100 DOLLARS ($125.69) beginning March 12, 1984 and continuing each month thereafter until paid. As counter-plaintiff, HSA admits it is the owner and holder of this promissory note. It is the general rule that the pleadings in a particular case are to be regarded as judicial admissions, rather than just ordinary admissions. *Kirk v. Head*, 137 Tex. 44, 152 S.W.2d 726, 729 (1941).

In addition to HSA's judicial admission that it is the holder of the note in dispute, the following cross examination testimony was elicited from Erving Netherland, Vice President of HSA services corporation:

Q. So he's assigning that to your corporation.

A. That's correct.

Q. And kindly tell the jury the date of his assignment?

A. It's dated the 12th of January.

Q. And kindly tell the jury the date of the retail installment contract on the front of it, please, sir?

A. It's dated the 12th of January.

Q. All right, sir. So, he's assigned the assignment to your company on January 12th, 1984, is that right?

A. That's the date on the back, yes sir.

While there was some dispute in the record as to when the assignment was performed, the jury answered special issue number thirteen against defendant MB & S by finding that a January 12, 1984, assignment was made to a finance company.

## THE FTC RULE

■ The Federal Trade Commission (FTC) designed 16 CFR § 433.2 (1986) (hereafter the FTC rule) to prevent the widespread use of credit terms which compel consumers to pay a creditor even if the seller's conduct would not entitle the seller to be paid. 41 Fed. Reg. 20,022 (1976) (to be codified at 16 C.F.R. § 433.2). The Rule preserves the consumer's legally sufficient claims and defenses so that they may be asserted to defeat or diminish the right of a creditor to be paid, where a seller who arranges financing for a buyer fails to keep his side of the bargain. *Id.* at 20,023. The FTC rule states the following:

§ 433.2 Preservation of consumers' claims and defenses, unfair or deceptive acts or practices.

In connection with any sale or lease of goods or services to consumers, in or affecting commerce as "commerce" is defined in the Federal Trade Commission Act, it is an unfair or deceptive act or practice within the meaning of section 5 of that Act for a seller, directly or indirectly, to:

(a) Take or receive a consumer credit contract which fails to contain the following provision in at least ten point, bold face, type:

### NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. *RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.* (Emphasis added).

or,

(b) Accept, as full or partial payment for such sale or lease, the proceeds of any purchase money loan (as purchase money loan is defined herein), unless any consumer credit contract made in connection with such purchase money loan contains the following provision in at least ten point, bold face, type:

NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER. 16 C.F.R. § 433.2 (1986)

The FTC also calls our attention to the following:

There is an important limitation on the creditor's liability, however. The wording of the Notice includes the sentence "Recovery hereunder by the debtor shall be limited to amounts paid by the debtor hereunder." This limits the consumer to a refund of monies paid under the contract, in the event that an affirmative money recovery is sought. In other words, the consumer may assert, by way of claim or defense, a right not to pay all or part of the outstanding balance owed the creditor under the contract; but the consumer will not be entitled to receive from the creditor an affirmative recovery which exceeds the amounts of money the consumer has paid in. 41 Fed. Reg. 20,-022, 20,023 (1976) (to be codified at 16 C.F.R. § 433.2).

However, the FTC emphasized that the limitation on affirmative recovery does not eliminate any other rights the consumer may have as a matter of local, state or federal statute. *Id.* at 20,023. The words "recovery hereunder" which appear in the text of the notice refer specifically to a recovery under the notice. *Id.* at 20,023. If a larger affirmative recovery is available against a creditor as a matter of state law, the consumer would retain this right.

In drafting the FTC rule, the FTC concluded that the holder in due course doctrine was often used by a merchant to gain an advantage in a consumer transaction. Note, *The New FTC Trade Regulation Rule on Holder in Due Course,* 13 Hous. L.Rev. 789, 790 (1976) (hereafter Note). A merchant engaged in unethical and disreputable sales practices to establish and maintain his place in the market would use the doctrine as a shield despite the existence of continual breaches of warranty and contract on his part. Note at 790. A typical situation found by the Commission was as follows: (1) the execution by the consumer of a promissory note or waiver of defense and subsequent negotiation or assignment of the contract by the seller to a third party financier; (2) seller misconduct in the transaction between seller and consumer— that is, an infirmity in the original sale or the development of a fault or defect following the sale; (3) failure of the seller to remedy the defect or otherwise deal with the complaint of the consumer either through absolute unwillingness on the part of the seller or due to the seller's disappearance from the market; (4) interruption in payments by the consumer to the financier; and (5) assertion by the financier of its protected status in order to obtain payment on the obligation. Note at 790–91.

The purpose of the FTC rule would be to remove the risk from the one party to the transaction who is least able to be compensated for a seller's breach—the consumer. Note at 791. The Commission found that as between the three parties to the transaction—seller, consumer, and finance company—the finance company was in the best position to protect itself and the consumer by assuming liability. Note at 791.

In Texas, cases involving the Deceptive Trade Practices—Consumer Protection Act (DTPA) are interpreted in conjunction with the Commission's assistance in construing which acts may be unfair or deceptive. TEX. BUS. & COM. CODE ANN. § 17.-46(c)(1) (Vernon Supp.1986):

It is the intent of the legislature that in construing Subsection (a) of this section in suits brought under Section 17.47 of this subchapter the courts to the extent possible will be guided by Subsection (b) of this section and the interpretations given by the Federal Trade Commission and federal courts to Section 5(a)(1) of the Federal Trade Commission Act [15 U.S.C.A. 45(a)(1)]. *Wesware, Incorporated v. State*, 488 S.W.2d 844, 848 (Tex.Civ.App.— Austin 1972, no writ).

Furthermore, for a Texas court to deny a buyer the right to maintain an affirmative action against the holder of a retail contract due to a defect in the product purchased or for failure to insert the required notice would be tantamount to stating that there was preemption of the field by the Commission. Note at 797–98. This practice would be expressly contrary to the legislative intent of the FTC rule and contrary to the principles of federalism. Note at 798. Finally, in other cases heard prior to the amendment to the FTC Act where there was a state statute similar to a rule issued by the Commission, the courts have not declared that there is federal preemption of the state law but have looked only to see if the state act conflicted with the federal law. *Double-Eagle Lubricants, Inc. v. State of Texas*, 248 F.Supp. 515, 519 (N.D.Tex.1965), *appeal dismissed*, 384 U.S. 434, 86 S.Ct. 1601, 16 L.Ed.2d 670 (1966).

We hold that the FTC Rule does not preempt any recovery available to Guerra under Texas statutes which might be additional to that under the FTC Rule. The rule's limitation on damages available under the contract is not an absolute limitation since the suit was brought as an action under the DTPA and TEX.REV.CIV.STAT. ANN. art. 5069–13.03 (Vernon Supp.1986) (hereafter the Home Solicitation Act).

The jury answered all special issues in favor of Guerra and against the defendant Modern Builders and Supply. The jury found Modern Builders and Supply liable in the following manner:

1. Modern Builders and Supply (MB & S) expressly and/or impliedly warranted that work, labor and materials would be performed in a good and workman-like manner and did not do so.

2. MB & S's failure to perform was committed knowingly and was a producing cause of Guerra's damages.

3. MB & S knowingly represented to Guerra that the services to be performed would be of a particular standard, and the representation was a producing cause of Guerra's damages.

4. MB & S knowingly engaged in an unconscionable course of conduct in its dealings with Guerra, and the conduct was a producing cause of Guerra's damages.

5. MB & S induced Guerra to sign a certificate of completion before the completion of the construction work, and MB & S failed to inform Guerra at the time he signed the contract of January 12, 1984, of his right to cancel.

6. MB & S negotiated, transferred, sold or assigned the retail installment contract of January 12, 1984, to a finance company or other third party prior to midnight of the fifth business day after January 12, 1984.

 Any violation of the Texas Home solicitation Act is a deceptive trade practice. All remedies available to a plaintiff under the DTPA are available as remedies under the Consumer Credit Act. TEX. REV.CIV.STAT.ANN. art. 5069—13.03(e) (Vernon Supp.1986). By the jury's findings, MB & S was guilty of violating the Home Solicitation Act and therefore guilty of deceptive trade practices. HSA would have this court require specific findings against HSA before liability may be imposed against it. We cannot agree with this interpretation as we are guided by the FTC rule in interpreting the DTPA and Consumer Credit Code.

## SPECIAL ISSUES

 The FTC Rule denies to the holder of the contract the benefits which might otherwise be available to him under the holder in due course doctrine. *Cooper v. RepublicBank Garland*, 696 S.W.2d 629,

632 (Tex.App.—Dallas 1985, no writ). The FTC rule prevents the occurrence of what the Federal Trade Commission concluded was an unfair and deceptive trade practice—the separation of a buyer's duty to pay from a seller's duty to perform. *See* 40 Fed.Reg., 53,506; 53,524 (1975). The FTC rule places the holder of the contract in the shoes of the seller. *Cooper v. RepublicBank Garland*, 696 S.W.2d at 632. On its face, the FTC rule creates no new claims or defenses but merely permits the buyer/debtor to assert against the holder whatever claims or defenses that the buyer/debtor may have against the seller. The rule "allows the consumer to assert his *sale-related* claims and defenses against the holder of the credit obligation." 40 Fed.Reg. 53,506; 53,524 (1975) (Emphasis added).

It follows, that any claim the Guerras could have asserted against HSA as a result of the inclusion of the FTC rule in the contract must necessarily have been a claim arising out of the sale of the siding to them by MB & S. The jury in this cause found ample support in the evidence to conclude that MB & S committed deceptive trade practices. Since Guerra's claims against HSA arose directly from the financing transaction of the siding, we hold that HSA stood in the shoes of the seller and was the party best able to absorb the costs of the wrongful acts of MB & S.

Both parties cite this court to several cases which support their respective allegations as to whether the FTC rule limits the liability of an assignee. We hold the FTC rule does not limit the liability of a holder of a contract for the deceptive trade practices of the seller.

HSA alleges three specific contentions:

1. Absent an independent cause of action against the assignee, the Texas Business and Commerce Code affords no affirmative recovery by the debtor against the assignee merely on the basis of his status as an assignee.

2. Federal law, on the other hand, does not limit the consumer's remedy to the avoidance of the balance due, but allows the consumer to recover all amounts paid under the contract.

3. There is no evidence nor any finding of damages caused by HSA to Guerra. All damages were found to be a result of MB & S's breach of warranty, misrepresentation of the material and services, and unconscionable conduct.

In support of these contentions, HSA cites *Kish v. Van Note*, 692 S.W.2d 463 (Tex. 1985).

In *Kish*, the Texas lower courts denied recovery under the Consumer Credit Code and allowed a partial recovery under the DTPA for damages accruing to the Kishes which resulted from a home improvement retail installment contract to construct a swimming pool. The Kishes had contracted with Todd Van Note d/b/a/ Cowboy Pools. Cowboy Pools had arranged with CES Financial to obtain financing for its consumers. CES obtained financing for the Kishes through the Bank of Dallas. The Kishes signed the contract and a Mechanic's and Materialman's Lien Contract which were both later assigned to the Bank of Dallas. The pool was negligently installed, but the Bank had paid Cowboy Pools the entire contract price before construction had begun. The Kishes made five payments and refused to pay anymore. The Kishes sought recovery from the seller, the insurance company, and the assignee bank. The jury found every submitted issue in favor of the Kishes.

The Texas Supreme Court held that Cowboy Pools violated both the DTPA and the Consumer Credit Code. The Court ruled that the bank did not violate the DTPA and any Consumer Credit Code violations were not properly preserved by the Kishes.

Our Supreme Court impliedly held that there was no direct liability on the part of the assignee bank for their role in the consumer credit transaction. As such, this holding is consistent with our decision in the instant case.

■ In the case at bar, we decline to hold HSA directly liable for violations of the DTPA. However, HSA is derivatively

liable for all claims against the contract which the Guerras could have asserted against MB & S. While HSA is not a holder in due course it is a holder of the note in question as admitted in its answers to interrogatories. This status is sufficient under the FTC rule to find derivative liability against HSA. As such, the Guerras should properly be awarded recovery on their claims against HSA.

Furthermore, the aforementioned purpose of the FTC rule was to guard against this very scenario. By placing the assignee in the shoes of the seller the debtor retains not only the remedy of the assignee's contractual liability, but also may recover for any statutory liability of the seller. The FTC intended the Rule to compel creditors to either absorb the cost of the seller's misconduct or return it to the sellers. 40 Fed.Reg. 53,506; 53,524 (1975). Seller *and creditors* will be responsible for seller misconduct. *Id.* at 53,524 (Emphasis added). The holder of the paper clearly bears the losses occasioned by the actions of the seller. Special issues addressed specifically to the holder's liability are not necessary. Once the seller's liability is found by the jury, the assignee stands in his shoes in order to best absorb the costs of the seller's misconduct.

We hold that a reasonable construction of the contract as a whole, Texas statutory remedies, the FTC rule, and the pleadings, all grant the buyer the right to assert against the seller, as well as any holder of the retail installment contract, all claims and defenses arising out of the sale without a limitation to the remedies on the contract.

We overrule HSA's first eight points of error.

■ We also overrule HSA's ninth, tenth and eleventh points of error. The common law defense of estoppel is not available in a DTPA action. A primary purpose of the enactment of the DTPA was to provide consumers a cause of action for deceptive trade practices without the burden of proof and numerous defenses encountered in a common law fraud or breach of warranty

suit. *Smith v. Baldwin,* 611 S.W.2d 611, 616 (Tex.1980).

■ HSA alleges in its twelfth point of error that the trial court erred in awarding actual damages and attorney's fees against MB & S and HSA because there was no jury finding of a violation of the Consumer Credit Code by HSA nor a jury finding of the existence of a home solicitation transaction. As we have stated earlier, special issue number thirteen specifically addressed the liability of MB & S. The jury found MB & S liable for violating the Consumer Credit Code's Home Solicitation Act in assigning the promissory note to HSA prior to midnight of the fifth business day following the day the contract was signed. TEX.REV.CIV.STAT.ANN. art. 5069—13.-03(a)(6) (Vernon Supp.1986). As assignee, HSA is placed in the shoes of MB & S for any claims or defenses Guerra could urge against MB & S which arose from their sales-related transaction.

TEX.REV.CIV.STAT.ANN. art. 5069—13.01(5)(A) (Vernon Supp.1986) defines a home solicitation transaction as follows:

As used in this Act:

"Home solicitation transaction" means a consumer transaction:

(A) for the purchase of goods, other than farm equipment, and insurance sales regulated by the State Board of Insurance, or services, payable in installments or in cash where the consideration exceeds $25, in which the merchant or person acting for him engages in a personal solicitation of the sale to the consumer at a residence and the consumer's agreement or offer to purchase is given at the residence to the merchant or person acting for him, but it does not include a sale made pursuant to a preexisting revolving charge account or retail charge agreement, or a sale made pursuant to prior negotiations between the parties at a business establishment at a fixed location where goods or services are offered or exhibited for sale.

TEX.REV.CIV.STAT.ANN. art. 5069—13.-03(a)(6) states:

It shall constitute a deceptive trade practice and a violation of this Act for any merchant to: negotiate, transfer, sell, or assign any note or other evidence of indebtedness to a finance company or other third party prior to midnight of the fifth business day following the day the contract was signed or the goods or services were purchased.

It was not necessary for the jury to find on a specific special issue that this transaction was a home solicitation. By answering special issue number thirteen, the jury implicitly found this case to involve a home solicitation transaction because MB & S violated art. 5069—13.03(a)(6). We hold there was ample evidence in the record to support the jury's answer to special issue number thirteen and a separate special issue finding that these facts support a home solicitation transaction would be superfluous.

■ Finally, HSA complains that it is not a merchant as defined by TEX.REV.CIV. STAT.ANN. art. 5069—13.01(4) (Vernon Supp.1986):

"Merchant means a party to a consumer transaction other than a consumer."

This statutory definition of merchant refers specifically to MB & S in the instant case. However, since HSA stepped into the shoes of the merchant, MB & S, Guerra may assert any claims or defenses against HSA that it could allege against MB & S. HSA becomes liable for the Home Solicitation Act violations found by the jury against MB & S.

We overrule HSA's twelfth point of error.

HSA argues its thirteenth and fourteenth points of error together. HSA complains in its thirteenth point of error that the trial court erred in failing to submit HSA's requested special issues because the answers would determine whether or not the trial court could decide that the subject paper had been improperly assigned as a matter of law. HSA alleges in its fourteenth point of error that it was error for the trial court to submit special issue number thirteen to the jury as it asks them to

decide a question of law. We will consider these points in reverse order.

■ A trial court must submit only those issues raised by the pleadings and supported by credible evidence. TEX.R. CIV.P. 277. It is fundamental that only issues of fact should be submitted to the jury. *Knutson v. Ripson*, 346 S.W.2d 424, 426 (Tex.Civ.App.—Amarillo 1961), *aff'd*, 354 S.W.2d 575 (Tex.1962). Special issue number thirteen states the following:

Do you find from a preponderance of the evidence that Modern Builders and Supply negotiated, transferred, sold, or assigned the retail installment contract of January 12, 1984, to a finance company or other third party prior to midnight of the fifth business day after January 12, 1984?

Answer: "WE DO" or "WE DO NOT"

We the jury answer WE DO.

As framed the issue involved the submission of a question of fact. The jury was asked, in effect, whether MB & S was liable for a violation of the Consumer Credit Code's Home Solicitation Transaction Act. The question of fact to be decided was whether MB & S assigned the note in dispute to HSA in the capacity of a finance company, and if so, when did the assignment occur. This issue clearly does *not* ask the jury to determine the legal effect of the transfer of the contract in question.

Special issue number thirteen was properly presented to the jury. We overrule HSA's point of error number thirteen.

The trial court denied the following special issues requested by HSA:

SPECIAL ISSUE NO. ——

Find from a preponderance of the evidence the date HSA Service Corporation funded the assignment of the Contract for Labor and Materials and Trust Deed from Modern Builders and Supply to HSA Service Corporation.

Answer: ——

SPECIAL ISSUE NO. _____

Find from a preponderance of the evidence the date of delivery of the Contract for Labor and Materials and Trust Deed from Modern Builders and Supply to HSA Service Corporation.

Answer: _____

SPECIAL ISSUE NO. _____

Do you find from a preponderance of the evidence that the assignment by Modern Builders and Supply to Home Savings Association of the Note, Retail Installment Contract and Contract for Labor and Materials and Trust Deed was a producing cause of damages to Plaintiffs?

Answer: "We Do" or "We Do Not"
ANSWER: _____

If you have answered the above special issue "We Do" then, and only then, answer Special Issue No. _____.

SPECIAL ISSUE NO. _____

Find from a preponderance of the evidence what amount of money, if any, that would reasonably or fairly compensate Plaintiffs' damages occassioned by the assignment of the Note, Retail Installment Contract, and Contract for Labor and Materials and Trust Deed by Modern Builders and Supply to Home Savings Association.

ANSWER: _____

All special issues submitted by HSA deal directly with the liability of HSA. The trial court presented special issue number thirteen to the jury which asked the jury to determine the liability of MB & S. We cannot see how anything is added for the jury's consideration by the submission of these issues: the finding of the contract, the date of delivery of the contract, the causation question and the damages issue.

Guerra was entitled to submit special issue number thirteen as HSA could be held liable for any claims successfully established against MB & S. Where the court has fairly submitted controlling issues raised by pleadings and evidence, the case will not be reversed because of a failure to submit other and various phases or different shades of the same issue. TEX.R.CIV.P. 279; *Schwab v. Stewart*, 387 S.W.2d 939, 944 (Tex.Civ.App.—Amarillo), *writ ref'd n.r.e. per curiam*, 390 S.W.2d 752 (Tex.Cr.App.1965). We overrule HSA's fourteenth point of error.

In its fifteenth point of error, HSA alleges the trial court erred in refusing to admit the testimony of HSA's expert which resulted in unfair prejudice to HSA. A trial court may exclude expert testimony if the expert's identity was not disclosed in a properly phrased interrogatory. *Duncan v. Cessna Aircraft Co.*, 632 S.W.2d 375, 385 (Tex.App.—Austin 1982), *rev'd on other grounds*, 665 S.W.2d 414 (Tex.1984). The record reflects Guerra properly sought the name of any expert HSA was prepared to use at trial. HSA failed to properly supplement its answers to the interrogatory. We see no abuse of discretion in the trial court's actions.

HSA further alleges it gave proper notice by letter to Guerra of the impending use of its expert at the trial. The record fails to reflect such a notice therefore nothing is preserved for our review. We overrule HSA's fifteenth point of error.

HSA argues in its final point of error that Guerra failed to request special issues inquiring into the liability of HSA under any theory of recovery which resulted in a waiver by Guerra of any recovery against HSA. We cannot agree. By submitting special issues regarding the liability of MB & S and having the jury successfully find such issues against that defendant, Guerra correctly established HSA's liability on the note. We fail to see how the judgment does not conform to the issues. We overrule HSA's sixteenth point of error.

Accordingly, we affirm the judgment of the trial court.